EL PUEBLO DE PUERTO RICO, peticionario, *v.* HENRY RÍOS NOGUERAS, acusado y recurrido.

*Número:* O-81-310      *Resuelto:* 30 de octubre de 1981

*Héctor Colón Cruz, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados del peticionario; *Carmen Ana Rodríguez Maldonado, Mario A. Rodríguez* y *Rafael Santiago Becerra,* de la Sociedad para Asistencia Legal, abogados del recurrido.

648

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

En el curso de la investigación de la muerte violenta de Miguel A. Fernández Hardouín, ocurrida el 22 julio, 1978 el testigo Francisco Lassen Sánchez prestó declaración ante el fiscal Sr. Wilfredo Rodríguez Figueroa en la que en síntesis expuso bajo juramento: [1] Que mientras tomaba un refresco en el negocio del Greco frente al caserío donde vivía, vio allí al recurrido Henry y a uno conocido por "Papo", cuando se acercó uno del mismo residencial conocido como "El Esgollao" e increpó a Papo y a Henry diciéndoles: "Bueno, qué pasa con ustedes, van a estar toda la noche para hacer una tontería como esa, o es que con ustedes ya no se puede contar para nada." Que Henry (el recurrido) le contestó "que estaba bien, que se iban ahora". Regresó el testigo a su apartamento pero salió otra vez a comprar un sandwich y un refresco en "Cecilia's" para su esposa, y estando allí vio llegar en dos ocasiones a Papo y Henry (el recurrido) en una guagua blanca; que el testigo se juntó con ellos cuando éstos se dirigieron al apartamento de Henry en el mismo residencial para "curarse" [2] y allí le aguantó la goma a Henry (Ríos Nogueras) y le preguntó para dónde iban a lo que (el recurrido) contestó "que iban por ahí a arreglar un asunto que tenían, o sea, un negocio"; que el testigo se ofreció a acompañarlos y se montó en la parte de atrás de la guagua separada del frente por una tela metálica, Papo tomó el guía y Henry se sentó a su lado; vio un bulto en el asiento delantero, cubierto por dos patas de pantalón; que la guagua tomó una ruta errática hasta que en determinado momento el testigo se percató de que perseguían un automóvil, y cuando llegaron a un final de calle en el área de Urb. El

---

[1] Luego de hechas las advertencias *Miranda*, toda vez que se le tenía como co-autor del crimen. El testigo alcanzó instrucción de cuarto año de escuela superior.

[2] Inyección de droga.

Remanso "Henry le dijo a Papo que se parara, y ahí mientras le decía párate, párate, estaba sacando un rifle que tenía en el bulto que yo ví, y ahí se viró en dirección hacia afuera y puso el rifle en la ventana de la guagua y ahí mismo comenzó a disparar. . . . Inmediatamente después de los disparos, Henry le dijo a Papo, embolla, embolla y ahí arrancaron la guagua. Cuando Papo arrancó la guagua, pues ahí yo veo que Henry se bajó y recogió los casquillos y los tiró hacia afuera de la guagua. De ahí cogimos una ruta y salimos frente a los almacenes Sears de Cupey". Que el ataque a tiros tuvo lugar a las 10:00 de la noche; que en ese momento nadie se bajó de la guagua y que Henry disparó desde su asiento en el vehículo muchas veces; "[s]e volvió loco disparando". Que al regreso el testigo preguntó "qué pasó, que por qué ellos estaban disparando [y] Henry me contestó que me olvidara de eso, que ellos sabían lo que ellos estaban haciendo".

Con este testimonio de Lassen Sánchez en juicio, el conductor de la guagua conocido por Papo y cuyo nombre es Alfonso Luis Otero Alejandro fue convicto de asesinato en primer grado e infracción de los Arts. 5 y 8A, Ley de Armas, sentencia que este Tribunal confirmó *per curiam* el 20 junio, 1980. *Pueblo* v. *Otero Alejandro*, 110 D.P.R. 34 (1980). Antes del juicio el testigo Lassen había declarado en iguales términos en la vista preliminar del caso contra Otero Alejandro, alias Papo, y en ambas ocasiones fue contrainterrogado por la defensa de éste. También fue contrainterrogado en la vista preliminar de este caso, llevado separadamente, por la defensa de Henry Ríos Nogueras imputado autor directo del crimen y aquí recurrido. Al llamarse para juicio el caso contra este segundo acusado, el ministerio público anunció que no podría presentar su testigo esencial Lassen Sánchez pues lo habían asesinado el día antes en la Cárcel Regional de Bayamón, donde se le había recluido en sumaria por cargos de tentativa de apropiación ilegal agravada y desacato al tribunal. Solicitó

el Pueblo de Puerto Rico que en sustitución de dicho testimonio directo, no disponible por la más radical causa de imposibilidad de comparecer, que es la muerte, se admita como prueba de referencia el relato de ese testimonio según vertido en la vista preliminar, por el Fiscal Sr. Wilfredo Rodríguez Figueroa, desde un principio a cargo de la investigación de este caso y quien había oído la invariable declaración del testigo occiso en no menos de cuatro ocasiones: en la temprana etapa de investigación en que tomó declaración jurada al testigo en Fiscalía; en la vista preliminar de la acusación contra Otero Alejandro alias Papo; en el juicio seguido a éste; y en la vista preliminar de la acusación contra el imputado de disparar Ríos Nogueras, aquí recurrido, en cuyas tres últimas instancias también presenció y escuchó dicho fiscal el contrainterrogatorio de los abogados defensores de uno y otro acusado. Ofreció también el ministerio público la transcripción del testimonio de Lassen en el juicio de Otero Alejandro. Para resolver sobre *admisibilidad* de este testimonio de referencia, en el Tribunal Superior hubo vista que tomó los días 31 octubre, y 3, 5 y 6 noviembre, 1980. (3) En la vista el Fiscal Rodríguez Figueroa reprodujo en sus propias palabras la declaración de Lassen Sánchez en la vista preliminar contra el actual acusado Henry Ríos Nogueras, tanto en el directo como en el contrainterrogatorio a que se había sometido al testigo Lassen. El fiscal no tomó notas del examen directo que él mismo condujo y al reproducir dicha parte del testimonio dependió de su recuerdo; para relatar lo declarado por Lassen en el contrainterrogatorio, el fiscal utilizó las notas que había tomado mientras la defensa repreguntaba. El Pueblo introdujo en evidencia esas notas, la transcripción del testimonio de Lassen Sánchez en el juicio contra Otero Alejandro y la declaración jurada que dicho testigo prestó ante el fiscal

---

(3) El legajo contiene una transcripción de la vista, de 149 páginas.

Rodríguez Figueroa al inicio de la investigación el 24 julio, 1978.

En 9 febrero, 1981 la sala de instancia dictó resolución en la que niega admisión en el juicio del testimonio de Lassen Sánchez en vista preliminar, según reproducido por el fiscal. Calificó el testimonio del fiscal como falto de confiabilidad porque "lo que se intenta presentar como lo manifestado por el testigo en la vista preliminar son unas notas incompletas y el recuerdo más o menos impreciso del fiscal". (Resolución pág. 21.)[4] Concluye que sólo sería admisible un récord taquigráfico o grabado de la vista preliminar, que no lo hay. Asimismo excluyó como inadmisible en el juicio, la transcripción del testimonio de Lassen Sánchez en el caso del acusado ya convicto Otero Alejandro, por no haber sido el recurrido Ríos Nogueras parte en aquel juicio, y por tanto no haber tenido oportunidad de contrainterrogar, a pesar de que la defensa de Otero contrainterrogó "con un interés y motivo similar"[5] al de Ríos, y ambos respondían a idéntica acusación por asesinato.

Al recurrir El Pueblo en *certiorari*, el 4 junio, 1981 dictamos la siguiente resolución:

> Se paralizan los procedimientos en instancia por el tiempo que tome la decisión de este recurso.
>
> El acusado recurrido tendrá de término hasta el 26 junio, 1981 para mostrar causa por la que no deba anularse la resolución de 9 febrero, 1981 de la Sala de San Juan, que denegó la admisión en evidencia del testimonio de Francisco Lassen Sánchez, principal testigo de cargo fallecido, por voz del fiscal Sr. Wilfredo Rodríguez Figueroa.

El escrito contestación de la Sociedad para Asistencia Legal, que lleva la representación del acusado reitera los

---

[4] El primer reparo del juez es que el fiscal declarante "es incapaz de recordar si al testigo se le hicieron preguntas sobre la importancia de la obligación de decir la verdad". (Resolución pág. 23.) Surge del récord que el testigo, con escolaridad de cuarto año de escuela superior, declaró *bajo juramento*.

[5] Regla 64(B)(1) de Evidencia.

razonamientos del juez de instancia, mas extiende la razón de inadmisibilidad con argumento de que la vista preliminar y el juicio tienen distinto propósito; que el contrainterrogatorio en una y otra etapa no es igual pues hay una diferencia en interés o motivo entre la vista y el juicio.

Hemos examinado la transcripción de la declaración del Fiscal Rodríguez Figueroa, compresiva del testimonio en vista preliminar del testigo fallecido Lassen Sánchez, y la encontramos coincidente, más allá de sus elementos esenciales o substanciales con la extensa declaración jurada prestada por el testigo Lassen en fiscalía sobre los hechos del día de autos, 22 julio, 1978, y que hemos esbozado al principio de esta opinión. Al referirse al contrainterrogatorio, el fiscal declara que Lassen Sánchez ratificó los conocidos hechos esenciales del caso. El fiscal presentó nueve carillas de nota por él tomadas de las contestaciones del testigo Lassen en repregunta (T.E., págs. 52 a 63) que ponen de manifiesto lo minucioso del examen a que la defensa sometió a Lassen.

En cuanto concierne a este caso, ordena la Regla 64 de Evidencia:

(B) Cuando el declarante no está disponible como testigo, es admisible como excepción a la regla de prueba de referencia:

(1) *Testimonio anterior*: Un testimonio dado como testigo en otra vista o una deposición tomada conforme a derecho del mismo u otro procedimiento, si es ofrecido contra una persona que en la ocasión en que se hizo la declaración ofreció la misma para su beneficio o tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que tiene en la vista.

■ Esta regla, en sí una excepción a la prueba de referencia, responde al propósito general de propiciar el acceso de la verdad a las salas de justicia, quitando obstáculos procesales que en ocasiones crecen como barreras de inmunidad y derrotan el juicio justo. Ese fin aflora en la Regla 2 de Evidencia que ordena: "Las disposiciones de

estas reglas se interpretarán flexiblemente y de forma que garanticen una solución justa, rápida y económica a cualquier problema evidenciario. El fin último de estas reglas es el descubrimiento de la verdad en todos los procedimientos judiciales"; y en la aseveración de este Tribunal: "En todo proceso adjudicativo, sea de naturaleza judicial, administrativa o de cualquier índole, debe prevalecer el propósito de hallar la verdad y hacer justicia a las partes. Las reglas procesales y en particular las de evidencia, persiguen viabilizar ese propósito; no obstaculizarlo." *J.R.T.* v. *Aut. de Comunicaciones*, 110 D.P.R. 879 (1981).

No sólo consideraciones de política pública, sino necesidad de abrir cauce a una justicia práctica, han impuesto el reconocimiento de excepciones y con ello la extensión de confiabilidad a la declaración en peligro de muerte (Regla 64(B)(2) de Evidencia); [6] y declaraciones de co-conspiradores (*Pueblo* v. *Lebrón López*, 96 D.P.R. 274, 282–288 (1968); *El Pueblo* v. *Díaz et al.*, 22 D.P.R. 191, 205 y ss. (1915)), en las que el objetivo central de hacer justicia, canalizado por la vía práctica, prescinde, aun de toda semblanza de derecho de confrontación.

La excepción que hace admisible el testimonio anterior no llega tan lejos en el desplazamiento de aquel fundamental derecho porque encarna en su naturaleza la realidad de que la persona contra quien se produce "ofreció la misma para su beneficio o tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que tiene en la vista". Regla 64(B)(1) *ante*.

La vista en que se rindió el testimonio original puede ser la vista preliminar ordenada por la Regla 23 de Procedimiento Criminal, siempre que satisfaga los requisitos cumplidos en este caso: 1) que la vista tenga carácter

---

[6] La declaración del moribundo reclama viejas credenciales constitucionales. *Mattox* v. *United States*, 156 U.S. 237, 243; 39 L.Ed. 409 (1895); *Kirby* v. *United States*, 174 U.S. 47, 61; 43 L.Ed. 890 (1899); *Pointer* v. *Texas*, 380 U.S. 400, 407; 13 L.Ed.2d 923 (1965).

judicial, de modo que sus procedimientos puedan relatarse o citarse como lo actuado ante un tribunal; 2) que el testigo haya estado bajo juramento; 3) que el acusado tuviera asistencia de abogado; y 4) que haya tenido oportunidad de contrainterrogar. *Cf. California* v. *Green,* 399 U.S. 149 (1970).

■ Es por demás estricta la norma de admisibilidad bajo la cual la sala de instancia evaluó el testimonio del Fiscal Rodríguez Figueroa. Cuando el método usado por razón de necesidad para introducir en el juicio el testimonio anterior vertido en la vista preliminar es el de reproducción oral, la declaración de un testigo presente que lo escuchó, es suficiente si de modo substancial reproduce los hechos esenciales en la declaración del testigo ausente del juicio. Las autoridades aprueban este método:

> El testimonio anterior puede probarse por lo menos de cuatro modos diferentes: (1) por la declaración de un observador presente en la anterior vista, quien deberá dejar al Tribunal satisfecho de que puede recordar el sentido o substancia de lo que dijo el testigo, aún cuando no pueda recordar las palabras exactas; (2) por la declaración de un observador directo que ha refrescado su memoria con un memorando como las notas de un taquígrafo, o la transcripción; (3) el récord taquigráfico oficial que tenga condición de récord público, o las notas de un observador del juicio si llena requisitos de memoria preservada en forma escrita. Estos métodos alternos de prueba están disponibles, pues lo que se intenta probar es el testimonio anterior y no la transcripción oficial, y por tanto no se aplica la regla de mejor evidencia. *Weinstein's* Evidence, United States Rules, 1979 págs. 805-56 a 804-57 en comentario de la Regla 804(b)(1) que corresponde a la nuestra Regla 64(B)(1).(7)

El testigo Fiscal Rodríguez Figueroa por cuya voz se ofrece llevar al jurado el testimonio altamente incrimina-

---

(7) Igual criterio sustentan Louisell and Mueller, *Federal Evidence,* 1980, Vol. 4, Sec. 487, págs. 1079–1080; McCormick, *Law of Evidence,* 2da ed. (1972), Sec. 260, págs. 624–625; Jones, *Evidence,* 6ta ed., (1972), Vol. 2, Sec. 9:29, pág. 245; *Underhill's Criminal Evidence,* 5ta ed., Vol. 2, Sec. 426, pág. 1089.

torio de Lassen Sánchez, no es mero observador directo o de primera mano. [8] La confiabilidad de su declaración está ampliamente avalada por su estrecho contacto con dicho testimonio desde que Lassen declaró ante él en Fiscalía; cuyo recuerdo ha estado preservado y reiteradamente renovado por la intervención de dicho fiscal en dos vistas preliminares (la de Otero Alejandro y la del apelado); así como en el juicio del primero en que obtuvo la convicción, en todas cuyas instancias condujo el interrogatorio de Lassen. Esa familiaridad con el testimonio de Lassen le han permitido al testigo Rodríguez Figueroa reproducirlo con notable integridad, en su esencia y substancia y tanto la parte de examen directo como la de repregunta, conclusión a que llegamos luego de examinar la transcripción de la declaración de dicho fiscal en la vista sobre admisibilidad. (T.E., págs. 42 a 136.)

Considerando admisible como evidencia en el juicio la tantas veces referida declaración, es innecesario resolver sobre la admisibilidad de la transcripción de lo declarado por Lassen Sánchez en el juicio de Otero Alejandro, [9] en

---

[8] Como no es de esperarse que en todos los casos de muerte o ausencia de juicio de un testigo esencial, pueda sustituirlo otro con las cualificaciones e indicios de confiabilidad del citado fiscal, debe hacerse un esfuerzo por dotar las vistas preliminares de medios que faciliten la transcripción oficial (récord) de sus procedimientos, al menos donde alguna de las partes depende de un testigo esencial. Como alternativa, puede la parte tomar su propia grabación o récord que le sirva para refrescar memoria al observador que más tarde relataría el testimonio anterior.

[9] La admisión descansa en la no disponibilidad del testigo y la oportunidad de contrainterrogar.

Toda vez que el testimonio previo se dijo bajo juramento y con oportunidad de contrainterrogar, la única ausente de las condiciones ideales para prestación de testimonio es la presencia del declarante y opositor (evidencia de comportamiento), elemento que falta en todas las excepciones de prueba de referencia, inferiores a éste en que aun el examen directo y redirecto por la parte que lo ofrece puede tomarse como equivalente al contrainterrogatorio de un testigo de la parte contraria. Falknor, *Former Testimony and the Uniform Rules: A Comment*, 38 NYU L. Rev. 561, n. 1; McCormick, *op. cit.*, Sec. 231, pág. 483; 5 Wigmore, *Evidence* § 1389, pág. 120.

La admisibilidad no está limitada a testimonio previo en juicio anterior en el mismo caso, requiriendo solamente *substancial* identidad de cuestiones como

cuya ocasión fue también contrainterrogado por la defensa, con un interés o motivo similar al del apelado; y si la objeción de que el derecho de confrontación en estas circunstancias ha de ejercitarse por el propio acusado, cede a la realidad de que en todo caso habrá más confrontación que en las declaraciones en peligro de muerte y las de co-conspiradores las cuales se admiten sin contrainterrogatorio ni confrontación alguna.

■ Finalmente, el testimonio y prueba de referencia

medio de asegurar que la anterior confrontación con el testigo sería equivalente a la actual si hubiera la misma oportunidad. Tampoco está la admisibilidad atada a mutualidad entre partes si la falta de identidad entre ellas no afecta el motivo para contrainterrogar y desarrollar el testimonio. En reiterado símil con la declaración del moribundo, admisible no obstante omitir por completo el derecho de confrontación, el Prof. Falknor reconoce igual admisibilidad al testimonio anterior aun cuando la confrontación e interrogatorio no se produjera por el propio acusado, sino por otro en similar situación. Falknor, *op. cit.*, n. 1. Anotaciones del Comité Asesor del Tribunal Supremo de los E.E.U.U. sobre Reglas de Evidencia, 20 U.S. Supreme Court Digest, L.Ed., pág. 516 y ss.

McCormick expone igual criterio:

El requisito [de oportunidad para contrainterrogar] debe reformularse no como uno mecánico de identidad o aun de identidad substancial de cuestiones, sino como requisito de que las cuestiones en el primer procedimiento, y en consecuencia el propósito para el cual se ofreció entonces dicho testimonio, necesariamente fue tal que el opositor actual (u otra persona con similar interés) tuvo motivo apropiado para comprobar en contrainterrogatorio la credibilidad del testimonio que ahora se ofrece. *Op. cit.*, § 257, págs. 621–622.

Los comentarios a la Regla 64 (Evidencia) del Secretariado de la Conferencia Judicial siguen la misma interpretación liberal al expresar:

La única razón para no admitir el testimonio anterior sería el hacer comparecer al declarante a ofrecer su testimonio en el caso presente; pero el declarante no está disponible como testigo. Así, pues, el testimonio anterior puede ser relativo a un procedimiento en que ni las partes ni el asunto son los mismos del caso posterior en que se ofrece en evidencia dicho testimonio. Como se trata de "testimonio" anterior, éste tiene las garantías mínimas de un testimonio en corte o por medio de deposición hecha bajo juramento y con sujeción a contrainterrogatorio.

El legítimo propósito de la nueva Regla 64 de Evidencia de impedir un fracaso de la justicia debe implementarse a plenitud, ya despejado el cauce que sin vulnerar el debido proceso, rechace la impunidad otorgada por el azar o la arbitrariedad.

No hay necesidad de llegar a tales extremos, pues el caso de autos es el típico de Regla 64(B)(1): el declarante no está disponible como testigo y su testimonio se ofrece contra un acusado que tuvo la oportunidad de contrainterrogar a aquél: "con un interés y motivo similar al que tiene en la vista."

que se admitirá en el juicio del recurrido está sujeto a impugnación de la credibilidad del declarante bajo las especiales disposiciones de la Regla 67 de Evidencia. Tal recurso, frente a los elementos de confiabilidad en la reproducción del testimonio anterior que hemos escrutado, ofrece al juzgador de hechos una base satisfactoria para evaluar su veracidad.

*Se expedirá el auto, se anulará la resolución recurrida y se remitirá el caso a instancia para continuación de procedimientos compatibles.*

El Juez Asociado Señor Irizarry Yunqué concurre en el resultado. El Juez Asociado Señor Martín no intervino.