EL PUEBLO DE PUERTO RICO, apelado, *v.* JULIO HERNÁNDEZ OSORIO, acusado y apelante.

*Número:* CR-81-14    *Resuelto:* 26 de febrero de 1982

*Sylvain Lorenzo Lagarde Garcés* y *Pedro J. Semidey Morales,* abogados del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

## SENTENCIA

No habiéndose demostrado la culpabilidad del apelante más allá de duda razonable, se revocan las sentencias apeladas.

Así lo pronunció y manda el Tribunal y certifica la Secretaria. El Juez Asociado Señor Díaz Cruz emitió opinión concurrente a la que se une el Juez Presidente Señor Trías Monge. El Juez Asociado Señor Negrón García emitió opinión concurrente a la que se unen los Jueces Asociados Señores Dávila e Irizarry Yunqué.

(*Fdo.*) Lady Alfonso de Cumpiano

*Secretaria*

—O—

Opinión concurrente del Juez Asociado Señor Díaz Cruz a la que se une el Juez Presidente Señor Trías Monge.

Las Reglas de Evidencia sobre admisión de testimonio han tenido una evolución lenta y deliberada porque operan en un campo sensitivo deslindado entre el derecho de confrontación del acusado y la necesidad de que la justicia prevalezca por sobre los torpes medios del encausado para destruir la prueba de su delito, que impulsan desde el soborno hasta el asesinato del testigo. Nadie cuestiona el

principio de que el interés apremiante del Estado en mantener la seguridad y la majestad del régimen de ley, la necesidad de mantener la fe del pueblo en la justicia, es en determinadas circunstancias propósito que debe prevalecer sobre el derecho de confrontación. Ningún sistema de justicia digno de su nombre y encomienda puede aprobar la invocación de derechos constitucionales dentro de una situación fabricada a la medida y para su beneficio por el ofensor del orden social que en vez de depender del contrainterrogatorio para proteger su libertad, opta por un crimen más para acallar al testigo, dándole muerte, comprando su testimonio perjuro, amenazándolo a él y a su familia o facilitando su traslado fuera de nuestra jurisdicción. Esta manera de frustrar la justicia y forzar al Ministerio Público a solicitar el archivo del caso por falta de pruebas, nació en América en el primer cuarto de siglo con el crimen organizado. El acusado enviaba una corona al entierro del testigo y cuando se llamaba el caso para juicio su defensor con gran solemnidad señalaba la indefensión de su cliente privado por la muerte del derecho fundamental a la confrontación. La indignación provocada por esta burla al más elemental sentido de justicia propició nuevas excepciones a la regla de prueba de referencia reducidas en su preceptiva a advertir que nadie puede salirse con la suya en el tribunal con el recurso a la violencia, el perjurio o el cohecho. Los tribunales al aprobar las nuevas reglas y el legislador al ratificarlas, no encontraron obstáculo constitucional en admitir bajo condiciones de confiabilidad, la declaración jurada del testigo anulado física o moralmente, al concurrir razones de necesidad que ya mucho antes habían dado acceso a la declaración de la víctima *in artículo mortis*. Ese es el mismo curso seguido por estas reglas sobre prueba de referencia en Puerto Rico, donde confrontados con el crimen de actualidad, y en auxilio de la justicia maltrecha y frustrada se aprobaron al cabo de cuidadoso estudio, las

Reglas de Evidencia de 1979 por este Tribunal y por la Asamblea Legislativa. El otro criterio, al negar valor y eficacia a las Reglas, va contra sus propios actos. Marginada quedó la valiosa anotación del Secretariado de la Conferencia Judicial a la Regla 65 en circunstancias más agudas que las del presente caso, pues no media el elemento de no disponibilidad:

> Aquí se incluyen excepciones firmemente establecidas a base de garantías circunstanciales de confiabilidad, sin que tenga que mediar el factor de necesidad de la no disponibilidad del declarante. Mientras en la regla anterior está presente el factor de "garantía circunstancial de confiabilidad", éste no opera sólo para determinar admisibilidad; es en conjunción con el factor de necesidad —no disponibilidad del declarante— que se admite la declaración. Aquí, en esta regla, el factor de garantía circunstancial de confiabilidad es de tanto peso que no se requiere el factor de necesidad o de no disponibilidad del declarante para establecer la admisibilidad. La confiabilidad de la declaración, aunque sea prueba de referencia, es tal que no se justifica exigir la comparecencia del declarante al tribunal, aunque esté disponible para declarar como testigo.

Otra solución privaría al Estado de un recurso indispensable en el enjuiciamiento de delitos mayores y alarga la vida al triste desenlace de la absolución obtenida por mano y poder de destrucción del imputado. La eliminación de pruebas por estos medios es preocupación constante de nuestras salas de justicia y principalmente causa de angustia en el pueblo reflejada en proyecto ante la Asamblea Legislativa ahora en sesión para ampliar el concepto de "no disponible" bajo el cual se admite la declaración jurada en ausencia del testigo.

Estas son las razones que abonan mi concurrencia en el resultado y a la adjudicación de no culpabilidad en los méritos de la prueba.

I

Ante el fiscal investigador de la muerte a tiros de Eugenio Sánchez, alias El Gato, (¹) compareció el testigo Edwin Meléndez Pizarro y prestó declaración jurada la cual firmó luego de transcrita, en la que afirma que el 4 noviembre, 1980, como a la 1:00 P.M. su primo Julio Hernández Osorio se presentó a su casa en el Barrio Monacillos de Río Piedras, acompañado de un individuo conocido por Lije, a invitarle para ir a matar al Gato; que el testigo se negó a ir y que el primo lo increpó diciéndole: "Chico, ¿qué pasa contigo? ¿y los tiros que te dieron a ti? ¿qué pasa contigo?" a lo que el declarante contestó que iba a dejar eso así; que entonces el primo Hernández Osorio le dijo que iba a matar al Gato; que los visitantes se retiraron y como a la media hora regresaron y le manifestaron al testigo que habían matado al Gato a tiros. El declarante notó que estaban armados porque vio bultos en la cintura tanto de Hernández Osorio como de Lije; que después de ese incidente no vio más a su primo Julio, pero a Lije lo ve a menudo por el barrio donde vive el testigo; que Hernández Osorio y Lije andaban en un carro grande negro que conducía el primo Julio; que la Policía fue a buscar al declarante como sospechoso por la muerte del Gato, pues había informado que éste le había pegado unos tiros; y que se decidió a declarar, ya que no estaba en el lugar de los hechos. Con base en dicho testimonio, el ahora apelante Hernández Osorio fue acusado por asesinato en primer grado e infracción de los Arts. 8 y 6 de la Ley de Armas.

Llegado el día del juicio ante tribunal de derecho, el fiscal llamó como su primer testigo al dicho Edwin Meléndez Pizarro, quien luego de ocupar la silla contestó a las primeras preguntas *que no iba a declarar,* y a insistencia del juez dio su nombre y lugar de residencia,

(¹) Apelativo único por el que se le conoció en vida.

sin más. Entonces el fiscal lo confronta con la declaración jurada y firmada que hemos reseñado, leyéndosela *in extenso* y solicitando una contestación sobre cada una de sus aseveraciones, repitiendo el testigo invariablemente: "Yo no voy a declarar; no tengo nada que declarar"; negativa que mantuvo aun después de orden del tribunal para que contestara las preguntas. El juez puso el testigo a la disposición de la Defensa para contrainterrogar, pero aquél rehusó toda contestación a las pocas preguntas formuladas, por lo que la Defensa abandonó el intento. El testigo fue finalmente retirado de la silla y se ordenó al fiscal que radicara contra él acusación por desacato. Continuó la presentación de prueba por el Estado, y más tarde en el curso del juicio el Ministerio Público identificó la declaración jurada del testigo recalcitrante mediante testimonio del fiscal investigador, y el estipulado de la taquígrafa de Fiscalía que tomó el testimonio bajo juramento de Meléndez Pizarro y lo transcribió en la declaración que éste firmó. El fiscal ofreció dicha declaración jurada en evidencia como prueba para sostener las acusaciones, y el tribunal la admitió, sobre la objeción de la Defensa fundada en que no tuvo oportunidad de contrainterrogar al declarante. La Defensa presentó como testigo al padre del testigo remiso para atacar su credibilidad según lo autoriza la Regla 67 de Evidencia, quien declaró que Edwin vivía en su casa; que el 4 noviembre, 1980 se ausentó del hogar durante media hora para votar como a las 9:30 A.M.; que cuando regresó, su hijo Edwin había salido, y que nadie fue a procurarlo durante el día. Sometido el caso, el tribunal halló al acusado culpable en todos los cargos y le condenó a penas de cadena perpetua, de 1 a 5 años de prisión y de 6 meses de cárcel, consecutivas.

En su alegato de apelación señala el convicto cinco errores que se contraen a los siguientes planteamientos:

(*a*) Indebida admisión en evidencia del testimonio de

Meléndez Pizarro según vertido en declaración jurada anterior;

(*b*) Insuficiencia y falta de confiabilidad en la prueba para sostener las acusaciones, consistente en parte de admisión del acusado, faltando corroboración.

## II

La objeción de la Defensa a que se admita la declaración jurada del testigo en la situación procesal que se produce por su negativa a sostenerla en juicio, remitiría el caso a la indeseable solución del pasado en que el tribunal tenía que someterse a la conjura de supresión de prueba, absolver al acusado, y en pobre remedio de vindicación de la justicia, conformarse con procesar al testigo por desacato o encubrimiento. Si el silencio del testigo se debiera a terror por la anunciada represalia del acusado, este recurso dirigido a encarcelarlo dejaría la administración de justicia criminal expuesta a descrédito y escarnio. Para corregir anomalías como ésta y otras de mayor o menor agravio al básico sentido moral de justicia, se aprobaron las Reglas de Evidencia de 1979, cuya norma de interpretación en su Regla 2 ordena:

> Las disposiciones de estas reglas se interpretarán flexiblemente y de forma que garanticen una solución justa, rápida y económica a cualquier problema evidenciario. El fin último de estas reglas es el descubrimiento de la verdad en todos los procedimientos judiciales.

Hay que reiterar que el fin último, la *raison d'être* de las Reglas de Evidencia es el descubrimiento de la verdad, único objetivo que satisface la justicia, y no la oscura alternativa de enviar a prisión testigos sobornados o simplemente aterrorizados.

La anormalidad procesal gestada por la total abstención del testigo Meléndez Pizarro de sostener su testimonio incriminatorio ante el tribunal encuentra remedio y correctivo en la Regla 64 que provee para esta situación de

"no disponibilidad" del testigo en circunstancia de necesidad. Instruye, en lo pertinente, la citada regla:

Regla 64. *No disponibilidad del testigo*

(A) *Definición.* "No disponible como testigo" incluye situaciones en que el declarante:

(1) .　　.　　.　　.　　.　　.　　.　　.

(2) insiste en no declarar a pesar de orden del tribunal para que declare, o

(3) .　　.　　.　　.　　.　　.　　.　　.

(4) .　　.　　.　　.　　.　　.　　.　　.

(5) .　　.　　.　　.　　.　　.　　.　　.

(B) Cuando el declarante no está disponible como testigo, es admisible como excepción a la regla de prueba de referencia:

(1) *Testimonio anterior . . .*

(2) *Declaraciones en peligro de muerte . . .*

(3) *Declaraciones contra interés . . .*

(4) *Declaraciones sobre historial personal o familiar . . .*

(5) *Otras excepciones:* Una declaración con suficiente garantía circunstancial de confiabilidad si se determinare que:

(i) tiene mayor valor probatorio, en relación al punto para lo que se ofrece, que cualquier otra evidencia que el proponente pudiera conseguir mediando esfuerzo razonable y

(ii) el proponente notificó a la parte contra quien la ofrece, con razonable anterioridad, su intención de ofrecer en evidencia tal declaración informándole sobre los particulares de ésta, incluyendo nombre y dirección del declarante.

A la luz de esta Regla 64 Meléndez Pizarro se convirtió en testigo no disponible porque rehusó declarar en desobediencia de orden del tribunal para que lo hiciera. Su

conducta promueve la excepción a la regla de prueba de referencia del apartado (B)(5) que en tal caso, en calidad de admisibilidad, exige: (1) garantía circunstancial de confiabilidad en la declaración que se ofrece como sustituto del testimonio oral suprimido; (2) previa determinación por el tribunal del superior valor probatorio de la declaración para establecer el hecho pertinente, comparada con cualquier otra evidencia obtenible mediante razonable gestión del proponente; y (3) de haber el proponente notificado a la parte contra quien se ofrece, su intención de ofrecer dicha declaración en evidencia. La admisión por el tribunal de la declaración jurada del testigo se produce en condiciones de cumplimiento y observancia de los requisitos de esta excepción que en ningún modo cuestionó la Defensa, pues su objeción se ciñe a la falta de oportunidad de contrainterrogar derivada de la renuencia del testigo. Mas pasando sobre la falta de objeción del acusado, notamos que la garantía de confiabilidad de la declaración es irreprochable, pues fue suscrita por el testigo luego de transcrito el testimonio oral en Fiscalía, hechas todas las advertencias de ley; su valor de evidencia para probar el asesinato es único, porque no consiguió el fiscal más prueba que la circunstancial y de confesión vertida en la declaración jurada; y si bien no parece que mediante acto afirmativo notificara el fiscal a la Defensa su intención de ofrecerla en evidencia, el desarrollo del juicio demostró que tal notificación había quedado relegada a gesto fútil, pues la Defensa conocía la declaración y tenía a la mano los recursos de prueba para impugnar la credibilidad, que efectivamente utilizó con el resultado favorable a que se llega en esta decisión. En otro caso en que la retractación del testigo surja inesperadamente en pleno juicio, el requisito del apartado *ii* citado provocaría una suspensión de los procedimientos por el tiempo razonable que permita a la Defensa informarse para atacar la credibilidad del

declarante, según lo autoriza la Regla 67.(2) En su balance de flexibilidad, franqueando la admisión del testimonio mientras reduce en lo posible la erosión del derecho de confrontación, la Regla 67 amplía y liberaliza la norma de impugnación de credibilidad al disponer para estos casos de excepción de prueba de referencia que "[e]videncia de declaraciones o conducta del declarante —en cualquier momento— inconsistente con su declaración admitida . . . no estará sujeta a requisito alguno de confrontación previa, para dar oportunidad al declarante de explicar o negar la declaración o conducta inconsistente".

Todo este esquema responde a razones de necesidad en la realización práctica de la justicia confrontada al presente con la supresión espuria de la prueba en casos criminales mayores mediante recurso a la amenaza, el soborno, el terrorismo y aun la simple cooperación del testigo en el encubrimiento. En protección del valor supremo de justicia, inalcanzable si no se llega al descubrimiento de la verdad, las Reglas de Evidencia admiten prueba como excepción a la regla de prueba de referencia, limitando la confrontación en ciertos casos y excluyéndola en otros de factura clásica como lo son las declaraciones en peligro de muerte, las declaraciones contra interés y las declaraciones sobre historial personal o familiar que bajo los incisos (B)(2), (3) y (4) de la Regla 64 comparten la licencia de admisibilidad con la declaración del testigo no disponible en circunstancia de apartado (5) a que hemos

---

(2) Regla 67. *Credibilidad del declarante*

"Cuando se admite en evidencia, conforme a este Capítulo, una declaración que sea prueba de referencia, la credibilidad del declarante puede ser atacada, y si atacada, puede ser sostenida por cualquier evidencia que sería admisible a esos fines si el declarante hubiera prestado testimonio como testigo. Evidencia de declaraciones o conducta del declarante —en cualquier momento— inconsistente con su declaración admitida a pesar de ser prueba de referencia, no estará sujeta a requisito alguno de confrontación previa, para dar oportunidad al declarante de explicar o negar la declaración o conducta inconsistente. Si la parte contra la cual se ha admitido prueba de referencia llama al declarante de ésta como testigo, éste queda sujeto a ser examinado por dicha parte como si estuviera bajo contrainterrogatorio."

atendido en esta decisión. (³) Ese acondicionamiento de las Reglas para que sirvan su propósito depurador de la verdad en sala de justicia no conlleva restricción impermisible del derecho de confrontación del acusado, según tiene resuelto este Tribunal en *Pueblo* v. *Ruiz Lebrón*, 111 D.P.R. 435 (1981), y *Pueblo* v. *Ríos Nogueras*, 111 D.P.R. 647 (1981). Todo el esquema responde a la interpretación flexible del referido apartado 5, criterio ordenado en la Regla 2 y seguido en el Comentario del Secretariado de la Conferencia Judicial que citamos:

[Regla 64] 5. *Otras excepciones:* Este inciso es crucial pues implica que las situaciones enumeradas en los cuatro incisos anteriores no son las únicas que producen admisibilidad cuando el declarante no está disponible como testigo. Aunque podría argumentarse que una cláusula como ésta introduce incertidumbre en las Reglas de Evidencia, debe tenerse presente que se ha elaborado una norma a base de factores de necesidad: la declaración, que debe de gozar de garantías circunstanciales de confiabilidad, es la evidencia de mayor valor probatorio disponible. Además, se exige que el proponente notifique prontamente a la otra parte en relación a la intención de ofrecer en evidencia la declaración. Debe siempre tenerse en cuenta que el fin último de estas reglas es el descubrimiento de la verdad (Regla 2), lo que implica que no debe excluirse la mejor evidencia disponible. Se trata sólo de admisibilidad y el valor probatorio de la evidencia admitida será aquilatado por el juzgador. La norma aquí establecida es mucho menos liberal que la atrevida Regla 503(a) del Código Modelo de ALI de 1942 en virtud de la cual es admisible prueba de referencia si el declarante no está disponible como testigo. Estimamos que el enfoque correcto es el de la regla presente, tomada de la Regla 804(b)(5) de las Reglas Federales. Es, por así decirlo, el "justo medio" entre la peligrosa regla del Código Modelo y las reglas tradicionales que excluyen a veces la

---

(³) La utilidad de este inciso 5 y su contraparte Regla 65 (W) conocido como excepción genérica (y no residual), ha sido sostenida en *United States* v. *Friedman*, 593 F.2d 109 (9th Cir. 1979); y *United States* v. *Barnes*, 586 F.2d 1052 (5th Cir. 1978).

mejor o hasta la única evidencia disponible en relación a determinado asunto. 32 L.P.R.A. Ap. IV, Regla 65: *Comentario.*

No hubo error, por tanto, en la admisión por la sala de instancia, de la declaración jurada ofrecida en lugar del testimonio oral frustrado. Pero su efecto se detiene justo en la admisión del testimonio en evidencia, dejando al juzgador de hechos la mayor responsabilidad de aquilatar la prueba, su veracidad o credibilidad, y su suficiencia para probar los hechos imputados.

## III

La admisión que el testigo Meléndez Pizarro pone en boca del apelante de haber matado al Gato a tiros, tendría peso y valor de suficiencia de estar integrada a un cuerpo de evidencia circunstancial [4] que establezca el delito con aquel grado de certeza que induce la convicción moral en un ánimo no prevenido. La prueba en este caso no es de esa calidad. Si bien podría percibirse un hilo de vinculación entre la admisión de haber dado muerte a la víctima a

---

[4] Regla 10. *Evaluación y suficiencia de la prueba*

"El tribunal o juzgador de hechos deberá evaluar la evidencia presentada, a los fines de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los siguientes principios:

(A) .

(B) .

(C) Para establecer un hecho no se exige aquel [grado] de prueba que, excluyendo posibilidad de error, produzca absoluta certeza; sólo se exige la certeza o convicción moral en un ánimo no prevenido.

(D) .

(E) .

(F) .

(G) .

(H) Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Se entiende por evidencia directa aquella que prueba el hecho en controversia sin que medie inferencia o presunción alguna, y que de ser cierta demuestra el hecho de modo concluyente. Se entiende por evidencia indirecta o circunstancial aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual —en unión a otros hechos ya establecidos— puede razonablemente inferirse el hecho en controversia."

tiros y el deceso producido poco después por disparos de arma de fuego, no es ésa prueba suficiente en Derecho y faltan la certeza y la convicción moral que muevan la conciencia del juzgador hacia la imposición de la más severa pena que señala el Código Penal. Meléndez Pizarro declaró que se negó a acompañar al apelante y a Lije en la empresa criminal, a pesar de que todavía cojeaba de las heridas de bala que le infirió el Gato y que permaneció en su casa porque iba a "dejar eso así"; el juez instructor de causa, Sr. Alberto Toro Nazario, llamado como testigo por el Ministerio Público, dijo recordar pocos detalles del caso, pero sí estar seguro de que el único testigo directo de los hechos llevado ante él lo fue Meléndez Pizarro quien declaró haber visto al acusado Hernández Osorio disparar con una pistola contra la víctima (E.N.P., pág. 8) lo que sitúa al testigo en el lugar del crimen y no en su casa, dato crítico éste que luego tiende a confirmar nada menos que el padre del testigo, quien presentado por la Defensa declaró que el día de autos, 4 de noviembre último, dejó a su dicho hijo Edwin en la casa cuando salió a votar a las 9:30 A.M., y que de regreso media hora después ya aquél había salido, y que nadie vino a procurarlo ni a la 1:00 P.M., como declaró Edwin, ni a ninguna otra hora. Recuérdese que el Gato fue muerto alrededor de la 1:45 P.M. (E.N.P., pág. 6.)

Prueba tan contradictoria no satisface el criterio de *Pueblo* v. *Pérez Fernández*, 95 D.P.R. 919, 922 (1968), de corroboración por evidencia sustancial independiente que tienda a establecer la veracidad de las admisiones. Su endeblez la disuelve en dudas insuperables.

Con estos antecedentes y fundamentos, concurro en la revocación de las sentencias y absolución del apelante.

—O—

Opinión concurrente del Juez Asociado Señor Negrón García a la que se unen los Jueces Asociados Señores Dávila e Irizarry Yunqué.

Esta apelación suscita cuestiones fundamentales en torno al alcance de las Reglas 63 y 64(B)(5) de Evidencia con relación al importante derecho constitucional a la confrontación.

El apelante Hernández Osorio fue hallado culpable de asesinato en primer grado e infracción de los Arts. 6 y 8 de la Ley de Armas. Ante nos señala, esencialmente: (*a*) indebida admisión en evidencia de una declaración jurada prestada por el testigo de cargo, y (*b*) insuficiencia de la prueba. El primer planteamiento es meritorio. Veamos.

La única prueba incriminatoria del Ministerio Fiscal que conecta al apelante con la comisión de los delitos se basa en el contenido de la declaración jurada prestada por el testigo no ocular de los hechos, Edwin Meléndez Pizarro, ante el fiscal investigador del caso el día del suceso, 4 de noviembre de 1980, ya que éste, tanto en la vista preliminar celebrada bajo la Regla 23 de Procedimiento Criminal como el día del juicio en su fondo, desde la silla testifical adoptó la postura de *no declarar*. Únicamente a requerimiento de la ilustrada sala sentenciadora dio su nombre y lugar de residencia. El Ministerio Fiscal lo confrontó entonces con la referida declaración jurada, mas el testigo se reiteró en no declarar. El juez lo puso a disposición de la Defensa para fines de contrainterrogatorio, pero ésta tampoco tuvo éxito, pues igualmente rehusó contestar las pocas preguntas formuladas. El testigo fue retirado de la silla y el tribunal procedió a acusarlo por desacato fijándole fianza de $5,000 en efectivo. Subsiguientemente, el Ministerio Fiscal ofreció en evidencia la declaración jurada del testigo recalcitrante, debidamente identificada, como prueba sustantiva para sostener las acusaciones. La Defensa objetó oportunamente invocando como fundamento el no haber tenido oportunidad de contrainterrogar al declarante. Apoyándose en la Regla 63 de Evidencia y en que dicha declaración fue prestada en forma voluntaria y "era la verdad del caso", el tribunal la

admitió como prueba de cargo, teniendo la Defensa que optar por impugnar la credibilidad del declarante al amparo de la Regla 67 de Evidencia([1]) mediante el testimonio de su propio padre.

La importancia de las cuestiones envueltas y sus consecuencias sobre el derecho a confrontación consignado en la Sec. 11 del Art. II de la Constitución no obligan a prescindir de los requisitos establecidos en la Regla 4 sobre el efecto de error por admisión errónea de prueba.

## I

### A. *Consideraciones Preliminares*

Indudablemente la declaración de Meléndez Pizarro prestada bajo juramento ante el fiscal investigador es prueba de referencia según la definición de la Regla 60 de Evidencia.([2]) Por supuesto, no toda prueba de referencia es inadmisible aunque es menester reconocer que toda prueba de referencia lesiona, *en algún grado*, el derecho a confrontación. De otra manera, ninguna prueba de referencia sería admisible, lo cual es insostenible. Ahora bien, existe cierta relación entre las reglas que gobiernan la prueba de referencia y el derecho constitucional a la confrontación con testigos de cargo; pero esa relación no es la de

---

([1]) Dispone:

"Cuando se admite en evidencia, conforme a este Capítulo, una declaración que sea prueba de referencia, la credibilidad del declarante puede ser atacada, y si atacada, puede ser sostenida por cualquier evidencia que sería admisible a esos fines si el declarante hubiera prestado testimonio como testigo. Evidencia de declaraciones o conducta del declarante —en cualquier momento— inconsistente con su declaración admitida a pesar de ser prueba de referencia, no estará sujeta a requisito alguno de confrontación previa, para dar oportunidad al declarante de explicar o negar la declaración o conducta inconsistente. Si la parte contra la cual se ha admitido prueba de referencia llama al declarante de ésta como testigo, éste queda sujeto a ser examinado por dicha parte como si estuviera bajo contrainterrogatorio."

([2]) Su inciso (c) reza:

*"Prueba de Referencia:* 'Prueba de referencia' es una declaración aparte de la que hace el declarante al testificar en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado."

congruencia o equivalencia.(³) La admisión de prueba de referencia bajo una de las reglas de excepción puede ser constitucionalmente válida a pesar de que se lesione en algún grado el derecho a confrontación. Por otro lado, no es suficiente el que la evidencia ofrecida esté amparada por alguna de las reglas de excepción, pues en ciertos casos la lesión al derecho a confrontación es de tal *magnitud* que la admisión de la prueba adolecería de vicio constitucional. Lo importante, a juicio nuestro, es que haya habido una "adecuada oportunidad" para contrainterrogar. *Pueblo* v. *Esteves Rosado*, 110 D.P.R. 334 (1980). Por ello la interpretación y alcance de las Reglas de Evidencia, en particular de las excepciones a la regla de exclusión de prueba de referencia, debe hacerse bajo el marco de la cláusula constitucional de confrontación. Con estas consideraciones en mente examinamos en detalle la cuestión evidenciaria que nos ocupa.

Las únicas reglas de excepción que concebiblemente podrían justificar la evidencia de la declaración jurada del testigo Meléndez Pizarro son la 63 ó 64(B)(5). El esclarecimiento de cuál resulta aplicable amerita una breve apreciación del esquema organizativo de la prueba de referencia.

B. *Esquema Organizativo sobre la Prueba de Referencia*

Al reflexionar sobre el esquema organizativo de las excepciones a la regla de exclusión de prueba de referencia notamos que aparte de la Regla 62 —cuya justificación es *sui generis*, pues es ilógico y absurdo concebir que una parte pueda sostener que no tuvo oportunidad de contrainterrogarse a sí misma— las Reglas 63, 64 y 65 descansan sobre tres supuestos o situaciones diferentes que

---

(³) *California* v. *Green*, 399 U.S. 149, 155 (1970): "Aunque podemos conceder que las reglas sobre prueba de referencia y la cláusula de confrontación generalmente están diseñadas para proteger valores similares, ello es una cosa muy diferente a sugerir que la superposición es total y que la cláusula de confrontación no es nada más ni nada menos que una codificación de las reglas sobre prueba de referencia y sus excepciones. . . ." (Traducción nuestra.)

hay que ponderar para evaluar cuánto sufre el derecho a confrontación en cada caso. Examinémoslas. *Primeramente*, bajo la Regla 63, se da la situación en que el declarante de referencia está disponible para declarar como testigo y efectivamente declara. En *segundo* lugar, la Regla 64 contempla la circunstancia cuando un declarante *no está disponible* como testigo en varias modalidades, a saber: porque no comparece al tribunal a pesar de los intentos *bona fide* de la parte que intenta presentarlo; por imposibilidad física; porque, a pesar de ocupar la silla de los testigos, no hay oportunidad de contrainterrogar efectivamente; porque el testigo invoca válidamente un privilegio; testifica no recordar; *o porque rehúsa declarar a pesar de que así lo ordene el tribunal.* Por último, existe la situación en que no es determinante si el testigo está o no disponible para declarar, si declara o no. Se trata de instancias en que la declaración de referencia es de tal *confiabilidad* que no se condiciona su admisibilidad a que el declarante declare ni a que esté disponible para declarar. Ello se rige por la Regla 65, en donde el ordenamiento resuelve, *a priori,* que el derecho a confrontación debe ceder ante las garantías circunstanciales de confiabilidad de la declaración de referencia. Por supuesto, en su aplicación, la admisión de prueba de referencia bajo la Regla 65 podría lesionar fatalmente el derecho de confrontación en ciertos casos particulares. Nos limitaremos ahora a examinar el alcance de las Reglas 63 y 64(B)(5) con relación al caso de autos.

## C. *Inaplicabilidad de la Regla 63*

La declaración jurada del testigo Meléndez Pizarro no es admisible bajo la Regla 63. Esta regla es de aplicación cuando un testigo presta una declaración en el tribunal distinta(4) a una anterior, para que el juzgador tenga el

---

(4)Como explicamos en *Pueblo* v. *Esteves*, supra, bajo la regla federal correspondiente —Regla 801(d)(1)— la declaración anterior del testigo debe ser (1) inconsistente con su testimonio en el tribunal, o (2) consistente con su

beneficio de evaluar ambas declaraciones y dar crédito a la que le parezca más confiable, si alguna. Es decir, la aplicabilidad de la Regla 63 supone que el testigo ofrezca *algún* testimonio. Si el testigo sencillamente se niega a declarar, el problema debe verse bajo la Regla 64. Por otra parte, si el testigo se niega a ser contrainterrogado con relación a la declaración anterior, se desvanece el fundamento de admisibilidad. Dicho fundamento es que estando el testigo declarando bajo juramento sobre su declaración anterior (si la hizo, si es verdadera, razones por las que la hizo, etc.), el juzgador tiene elementos de juicio suficientes y confiables para evaluar la declaración anterior, y, por lo tanto, el derecho de confrontación se lesiona sólo mínimamente. En *Pueblo* v. *Esteves Rosado*, supra, pág. 344, advertimos que la oportunidad de contrainterrogar "depende en cada caso de reacciones del testigo hacia la declaración y sus respuestas sobre el particular". Si el testigo en el contrainterrogatorio rehúsa contestar preguntas sobre la declaración anterior, no existe la *oportunidad* del contrainterrogatorio que supone la Regla 63. Como señalamos en *Esteves Rosado*, supra, pág. 345, "creemos que lo crucial es si la contestación del testigo permite preguntarle sobre sus percepciones y memoria relativa a los hechos que declaró anteriormente . . .". En el caso de autos el testigo Meléndez Pizarro ni siquiera contestó pregunta alguna en el contrainterrogatorio.

A manera de paréntesis y por vía ilustrativa es menester explicar brevemente el alcance del caso normativo de *California* v. *Green,* supra, en que el más alto foro federal decidió que los Estados pueden válidamente adoptar reglas de evidencia que permitan la admisión de declaraciones anteriores de un testigo como prueba sus-

testimonio en el tribunal y ofrecida para rebatir reclamo de fabricación o motivo impropio, o (3) sobre la identificación de una persona. Así, pues, no toda declaración anterior es admisible bajo la regla. Más aún, la declaración inconsistente ha de haber sido hecha bajo juramento sujeta a perjurio, y en un juicio, vista, deposición o procedimiento formal.

tantiva. Ello, claro está, no significa que se otorga una carta blanca irrestricta. Allí se resolvió que "la cláusula de confrontación no se viola al admitir la declaración fuera del tribunal *siempre que el declarante esté declarando como testigo y sujeto a un contrainterrogatorio completo y efectivo*". (Traducción y énfasis nuestros.) Pág. 158.

Es evidente, pues, que un testigo que rehúsa declarar no está sujeto a pleno y efectivo contrainterrogatorio con relación a la declaración anterior. La base para admitir la declaración anterior es que justamente como se dijo en *Green*, supra, "no es fácilmente demostrable que la inhabilidad de contrainterrogar al testigo en el momento en que hizo sus manifestaciones previas sea de importancia crucial, siempre y cuando al acusado se le asegure un completo y efectivo contrainterrogatorio en el juicio". (Traducción nuestra.) Pág. 159. Y más adelante, "[e]l testigo que ahora relata una versión diferente sobre los hechos debe necesariamente asumir una posición en cuanto a la veracidad de su declaración previa, brindando al jurado la oportunidad de observar y evaluar su comportamiento al negar o modificar su declaración previa". (Traducción nuestra.) Pág. 160. Finalmente, el propio Tribunal Supremo limita expresamente su decisión así:

> . . . la cláusula de confrontación no requiere la exclusión de declaraciones previas de un testigo que acepta haberlas hecho, y a quien se le puede pedir que defienda o de otro modo explique sus inconsistencias entre su previa y presente declaración de los hechos envueltos, abriéndose por sí mismo a un total y completo contrainterrogatorio en cuanto a las dos versiones. (Traducción nuestra.) Pág. 164.

En resumen, pertenece a la esencia de la Regla 63 que el testigo pueda ser contrainterrogado plena y efectivamente sobre su declaración anterior. El testigo que rehúsa declarar no está sujeto a ese pleno y efectivo contrainterrogatorio, por lo que sus declaraciones anteriores no son admisibles bajo la Regla 63. De otra manera se lesiona

fatalmente el derecho constitucional a la confrontación. Nuestra Regla 63 es la más liberal en la jurisdicción americana en cuanto a la regulación de las declaraciones anteriores de testigo. Expandirla más equivaldría a su desnaturalización y conduciría a resultados absurdos, sin entrar en los problemas de índole constitucional.

D. *Aplicabilidad de la Regla 64*

En correcta juridicidad, Meléndez Pizarro, al rehusar declarar, resulta ser un testigo "no disponible" bajo la Regla 64(A)(2). [5] Según ésta son admisibles en evidencia las declaraciones de ese testigo que satisfagan los requisitos de cualquiera de los incisos del apartado (B) de esa

---

[5] La Regla 64 en lo pertinente dispone:

*"No disponibilidad del testigo*

(A) *Definición.* 'No disponible como testigo' incluye situaciones en que el declarante:

(1) .        .        .        .        .        .        .        .

(2) *insiste en no declarar a pesar de orden del tribunal para que declare,* o

(3) .        .        .        .        .        .        .        .

(4) .        .        .        .        .        .        .        .

(5) .        .        .        .        .        .        .        .

(B) Cuando el declarante no está disponible como testigo, es admisible como excepción a la regla de prueba de referencia:

(1) *Testimonio anterior:* Un testimonio dado como testigo en otra vista o una deposición tomada conforme a derecho del mismo *u otro procedimiento,* si es ofrecido contra una persona que en la ocasión en que se hizo la declaración ofreció la misma para su beneficio o *tuvo la oportunidad de contrainterrogar al declarante* con un interés y motivo similar al que tiene en la vista.

(2) *Declaraciones en peligro de muerte...*

(3) *Declaraciones contra interés...*

(4) *Declaraciones sobre historial personal o familiar...*

(5) *Otras excepciones:* Una declaración con suficiente garantía circunstancial de confiabilidad si se determinare que:

(i) tiene mayor valor probatorio, en relación al punto para lo que se ofrece, que cualquier otra evidencia que el proponente pudiera conseguir mediando esfuerzo razonable y

(ii) el proponente notificó a la parte contra quien la ofrece, con razonable anterioridad, su intención de ofrecer en evidencia tal declaración informándole sobre los particulares de ésta, incluyendo nombre y dirección del declarante." (Énfasis nuestro.)

regla. Analicemos, pues, si ello se cumple en el caso de autos.

Lo primero que notamos es que la declaración jurada *ex parte* ante el fiscal investigador no es ninguna de las declaraciones contempladas en los incisos 1 al 4 del apartado (B). Advertimos que no es posible ubicarla expresamente bajo la Regla 64(B)(1), la cual se refiere al *testimonio* anterior, revestido de garantía de que hubo, al menos en esa u otra ocasión, la oportunidad de contrainterrogar con interés o motivo similar al que se tendría en la vista. La validez constitucional del testimonio anterior ha sido sostenida por el Tribunal Supremo de los Estados Unidos —*Ohio* v. *Roberts*, 448 U.S. 56 (1980)— y por este Tribunal en *Pueblo* v. *Ríos Nogueras*, 111 D.P.R. 647 (1981), y *Pueblo* v. *Ruiz Lebrón*, 111 D.P.R. 435 (1981). El testimonio anterior, empero, es una declaración formal, con juicio, vista, deposición o su equivalente, sujeto el declarante a contrainterrogatorio. La declaración *ex parte* que toma el fiscal investigador a un testigo potencial, sin oportunidad de contrainterrogar, no es admisible bajo la Regla 64(B)(1). Como cuestión de política pública en la administración de justicia criminal correspondería a la Asamblea Legislativa autorizar expresamente la toma de deposiciones a todo testigo de cargo, anticipando la posibilidad de que el testigo pudiere resultar no disponible bajo la Regla 64(A), de modo que tal deposición fuera automáticamente admisible bajo la Regla 64(B)(1), que incluye la "deposición tomada conforme a derecho". Al presente, la Regla 238 de Procedimiento Criminal autoriza la toma de deposiciones a algún testigo si "cualquiera de las partes estableciere, mediante declaración jurada, que existe fundado temor de que algún testigo en una causa criminal dejará de comparecer a menos que se le exija fianza . . .", como alternativa a dicha garantía. También debe entenderse que el uso de deposiciones es permisible en otras situaciones, tal y como implícitamente lo deci-

dimos en *Pueblo* v. *Ruiz Lebrón*, supra, en que sostuvimos la admisibilidad de una deposición tomada a un testigo de cargo al que calificó de "no disponible" por haberse ausentado de la jurisdicción.

Aclarados estos extremos, percibimos que tampoco la declaración jurada de Meléndez Pizarro sería admisible bajo la Regla 64(B) incisos 2 (prestada en peligro de muerte), 3 (contra interés) ó 4 (historial personal o familiar).

Réstanos examinar su admisibilidad bajo el inciso 5. Esta regla, bautizada por los tribunales como "cláusula residual", al igual que la Regla 65(W), tiene como propósito salvar la admisión de prueba de referencia *no contemplada* por el ordenamiento, y que, sin embargo, goza de garantías circunstanciales de confiabilidad tan buenas como las inherentes a las excepciones expresamente reconocidas en las reglas. *Análisis Editorial a la Regla 65(W)*, *P.P.P., Vol. I, Evidencia*, págs. 233–235, Publicaciones J.T.S., 1979. No creemos que la rutinaria declaración jurada que prestan los testigos de cargo a los fiscales investigadores sea la evidencia visualizada en la Regla 64 (B)(5). Esta regla se refiere a *situaciones no contempladas por el legislador*. No podemos atribuirle a este Tribunal Supremo, como tampoco a la Asamblea Legislativa —al elaborar las reglas de evidencia— desconocimiento de la práctica habitual de los representantes del Ministerio Fiscal de tomar declaraciones juradas a testigos en la etapa investigativa de un crimen. Se trata de una rutina tan básica que difícilmente podríamos sostener que no fuera susceptible de ser contemplada o visualizada y, por ende, incluida expresamente en el inventario de las excepciones.

Interpretando las Reglas 804(b)(5) y 803(24) —equivalentes a nuestras Reglas 64(B)(5) y 65(W)— los tribunales federales han resuelto que el fin de las mismas es estimular el crecimiento y desarrollo del Derecho proba-

torio, en cuanto a prueba de referencia, permitiendo a los tribunales la flexibilidad necesaria para atender *nuevas situaciones no contempladas en las excepciones tradicionales*, procurando, empero, que esta cláusula residual no vulnere las nociones que fundamentan las reglas. Así, en *United States* v. *Cain*, 587 F.2d 678, 682 (5th Cir. 1979), se dijo expresamente que "las excepciones residuales no son para autorizar revisiones judiciales extensas de la regla de la prueba de referencia . . .". La tendencia es no favorecer la invocación de la regla residual meramente porque no se satisface alguno de los requisitos para la admisibilidad bajo alguna de las excepciones. *United States* v. *Kim*, 595 F.2d 755, 761 (1979).

Las cláusulas residuales, si bien son un mecanismo para afrontar las "situaciones no contempladas", introducen el elemento de incertidumbre que las reglas precisamente quieren evitar. Por eso exigen requisitos de notificación previa y valor probatorio. Estos requisitos son de estricto cumplimiento. A tal efecto cuando se invoca la declaración residual por primera vez en apelación se vulnera el requisito de notificación. *United States* v. *Guevara*, 598 F.2d 1094 (7th Cir. 1979), y *United States* v. *One 1968 Piper Navajo Twin Engine*, 594 F.2d 1040, 1043 (5th Cir. 1979).

Aparte de que el Ministerio Público no estableció en el caso de autos los requisitos de admisibilidad de la Regla 64(B)(5), no se trata aquí de una situación no contemplada por el ordenamiento. Por el contrario, un testigo que rehúsa declarar y una declaración jurada ante fiscal son ciertamente "situaciones contempladas" en la práctica criminal y, por ende, no pueden dar lugar a la necesidad de aplicar la cláusula residual.

Somos de opinión que cometió error perjudicial el tribunal sentenciador al admitir como prueba de cargo la declaración jurada *ex parte* del testigo Meléndez Pizarro y

que ello infringió el derecho de confrontación del apelante. Éste no tuvo ninguna oportunidad de confrontarlo.

No es menester resolver el planteamiento de insuficiencia de la prueba. Eliminada la declaración del testigo Meléndez Pizarro, la prueba de cargo es ciertamente insuficiente para derrotar la presunción de inocencia. No se probó la culpabilidad del acusado más allá de duda razonable.

Las sentencias apeladas deberían revocarse por esta razón.

## II

Nuestro criterio, fundado en fiel acatamiento de las normas evidenciarias y constitucionales antes expuestas, no nos inhibe de exponer al margen unas reflexiones de rigor. Nos preocupa sobremanera que se vaya a instaurar en nuestro medio ambiente la práctica de que testigos esenciales de cargo —por temor, conveniencia u otros móviles ajenos a la búsqueda de la verdad— adopten el curso de acción del testigo Meléndez Pizarro. No somos insensibles a lo destructivo que puede ser esa técnica en la eficaz administración de la justicia criminal. Mientras no se enmiende la Constitución, hemos de respetar fielmente los principios doctrinarios penales existentes.

Observamos, sin embargo, que el mecanismo del desacato para sancionar la conducta de un recalcitrante *testigo ocular directo* de la comisión de un delito no es incompatible con el posible encausamiento —en condiciones apropiadas— del testigo así recalcitrante bajo el Art. 236 del Código Penal, 33 L.P.R.A. sec. 4432, que tipifica el delito de *encubrimiento*,(⁶) susceptible de ser castigado con una

---

(⁶) Reza:

"*Toda persona que con conocimiento de la ejecución de un delito* ocultare al responsable del mismo o *procurare* la desaparición, alteración u *ocultación de prueba para eludir la acción de la justicia,* incurrirá en las siguientes penas:

(a) Si el delito cometido fuere grave, reclusión por un término fijo de dos (2) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser

pena mayor a la dispuesta para el desacato. Como medio de conjurar la generalización de esta práctica, los representantes del Ministerio Fiscal, en situaciones comprendidas en el encubrimiento, deben estar atentos y diligentemente(7) adoptar las medidas reconocidas bajo nuestro derecho vigente. Precisamente el Código Penal, como excepción al principio de concurso de delitos, visualiza que "[u]n acto criminal no deja de ser penable como delito por ser también penable como desacato". Art. 64 (33 L.P.R.A. sec. 3322).

---

aumentada hasta un máximo de tres (3) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un (1) año.

(b) Si el delito cometido fuere menos grave, reclusión por un término que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares." (Énfasis suplido.)

(7) En el caso de autos Meléndez Pizarro se negó a declarar desde la vista preliminar. En esa ocasión el Ministerio Fiscal debió iniciar los trámites de desacato para solucionar ese problema. Obsérvese que no era un testigo directo del crimen, sino por referencia.