EL PUEBLO DE PUERTO RICO, apelado, *v.* NELSON STEVENSON COLÓN, acusado y apelante.

*Número:* CR-81-78          *Resuelto:* 7 de diciembre de 1982

---

(2) Disintieron el Juez Presidente Señor Snyder y el Juez Asociado Señor Negrón Fernández.

*Carmelo L. Marcucci*, abogado del apelante; *Miguel Pagán, Procurador General Interino*, y *Miguel A. Santana Bagur, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Nelson Stevenson Colón y Carmelo Colón Vázquez fueron acusados de asesinar a Rafael Malavé Ramos. Se le imputó a Stevenson haber contratado los servicios de Colón Vázquez por la suma de $2,000 para asesinar a Malavé. Ambos fueron convictos de asesinato en primer grado. Stevenson apeló. Para sostener su recurso apunta tres errores: (1) permitir que se leyera al Jurado la declaración jurada prestada ante el fiscal por Digno Burgos; (2) negarse a impartir instrucciones sobre corroboración de cómplice; y (3) insuficiencia de la prueba.

La prueba presentada por el Ministerio Público para sostener la acusación contra el apelante, en síntesis, fue la siguiente:

Enrique Lebrón Cotto declaró que Colón Vázquez lo invitó a trasladarse a la playa de Aguirre. Lo hicieron en el

carro del testigo. Al rato de estar en la playa, arribó el apelante llorando. Llegó acompañado de su esposa y de otra persona de nombre Digno Burgos. Stevenson llamó aparte a Colón Vázquez. Hablaron y Stevenson se marchó. El testigo le preguntó a Colón Vázquez el porqué del llanto de Stevenson. Colón le informó que tenía problemas con Malavé, la víctima.

Luego de marcharse el apelante, Colón Vázquez pidió al testigo que lo llevara de regreso al barrio Coquí. Allí lo dejó. Regresó a su casa, se bañó y comió. Al volver al Coquí, Colón le ofreció $1,000 por llevarlo a Salinas. Más tarde observa a Colón Vázquez hablando con Malavé. "Están riéndose, vacilando y chocándose los dos las manos." Colón y Malavé montan en el carro del testigo. Malavé en el asiento delantero. Colón ocupa el asiento trasero. Al llegar al sector Las Mareas, Colón pone una cuchilla en el cuello del testigo y le ordena que tome un atrecho. Llegan a un sitio donde Colón le ordena detener el vehículo y le dice a Malavé que se baje. Le quitó la llave del carro al testigo. Colón y Malavé se alejan del carro. Van hablando. Colón ataca a Malavé. Le entierra la cuchilla —que mide de 10 a 11 pulgadas— en el estómago. Malavé cae al suelo. Colón lo liquida a cuchilladas. Quince de ellas eran penetrantes. Llegaron al interior de las cavidades del cuerpo, en el tórax.

Terminada su encomienda, Colón se dirige a una zanja, se lava las manos y tira la cuchilla homicida. Regresa al carro, devuelve las llaves al testigo y le dice: "vámonos que ya llevo dos y si tú hablas vas a ser el número tres."

Regresaron al Coquí, Colón a su casa y el testigo a la suya. El testigo salió de nuevo y vuelve a encontrarse con Colón, quien le pide que lo lleve a casa del apelante. Allí no lo encontraron. Le instruye, entonces, para que lo lleve a casa de Digno Burgos, el mismo que había acompañado al apelante a la playa de Aguirre. Allí encontraron al apelante, éste abordó el carro, se fueron a dar una vuelta y más tarde fueron a su casa a comer. Allí el apelante le entregó a

Colón una pistola y le manifestó que si tenía que vender la máquina de soldar y el carro para pagarle los $2,000, lo haría.

El testigo regresó a su casa, y no pudo dormir. Al otro día dio cuenta de lo sucedido a un compadre, luego a una tía y finalmente al padre de un policía. El policía lo llevó al cuartel del NIC.

El próximo testigo presentado por el Ministerio Público fue Digno Burgos. Tiene 16 años. No trabaja ni estudia; no sabe leer ni escribir. Conocía a los participantes: al apelante, al victimario, a la víctima y al testigo Lebrón. Corrobora que fue a la playa con el apelante, donde encontró a Colón y a Lebrón. Manifiesta que el apelante habló con Colón y con Lebrón, pero no oyó lo que hablaron. No recuerda nada más. Se niega a declarar. El fiscal lo confronta con la declaración jurada prestada el 24 de mayo de 1981. Identifica su firma en la declaración, pero manifiesta que no va a declarar, que no quiere hacerlo, que nadie lo ha amenazado, ni le han ofrecido nada para que no declare. Insiste en que no puede decir por qué rehúsa declarar. El tribunal le hace las advertencias legales sobre su proceder. Informa que las entiende y que es consciente de ellas. Se lee al Jurado la declaración prestada por el testigo en la investigación fiscal.

El abogado de la defensa lo interroga sobre los pormenores de la declaración y las circunstancias en que las prestó. Manifiesta que lo llevaron al cuartel de la Policía en horas de la tarde y lo retuvieron allí hasta la madrugada. No le dieron de comer ni de beber. Fue amenazado con una macana. Lo hicieron arrodillarse y lo desnudaron. No recuerda qué día prestó la declaración. Que es la primera vez que relata lo que le ocurrió en el cuartel. Que en la declaración que prestó hay partes falsas y partes ciertas. Antes de comenzar el juicio se le dio a repasar la declaración. Él no contestaba, sino que el fiscal leía lo que decía y él contestaba que sí. Le había informado al abogado defen-

sor que la declaración contenía muchas falsedades. Nunca antes del juicio se quejó de que lo habían atropellado en el cuartel para que declarara. Afirma que el apelante y el testigo Lebrón no eran amigos ni se conocían.

El acusado presentó varios testigos de reputación. Prestó declaración. Manifestó que el 22 de mayo de 1981, por la mañana, fue al cuartel de la Policía de Salinas con su esposa, dos hijos, Digno Burgos y Jesús Ortiz. Tenía el propósito de entrevistarse con el juez con relación a un problema que había tenido con Malavé (la víctima). Luego fue a la playa de Aguirre para hablar con una persona de apellido Laporte. Estando en la playa se le acercó una persona, que luego supo era Enrique Lebrón, para hablarle de Malavé. Lebrón le manifestó que sabía que tenía problemas con Malavé, pero que no se preocupara porque Malavé le había hecho una trastada a él en relación con una estufa y que se las iba a cobrar, que Lebrón se iba a encargar de Malavé porque él no era bobo. Regresó a su casa a la 1:15 de la tarde, pero a las 3:00 p.m. volvió al barrio Aguirre. De allí fue a la casa del padre de Digno Burgos y, estando allí, llegó Lebrón, quien le ofreció en venta un carro. Le contestó que no lo necesitaba. Salieron a hablar el apelante y Lebrón y éste le informó "que había arreglado a Rafael Malavé Ramos". Niega conocer a Colón Vázquez.

I

■ Una declaración prestada bajo juramento por un testigo antes del juicio es admisible como prueba sustantiva en ciertas y determinadas situaciones. El requisito constitucional de todo acusado a confrontarse con los testigos de cargo se satisface si al momento de prestar la declaración hubo la oportunidad de contrainterrogarlo. *Pueblo* v. *Lebrón González*, 113 D.P.R. 81 (1982); *Pueblo* v. *Ríos Nogueras*, 111 D.P.R. 647 (1981); *Pueblo* v. *Ruiz Lebrón*, 111 D.P.R. 435 (1981); *Ohio* v. *Roberts*, 448 U.S. 56 (1980); *United States* v. *Tunnell*, 667 F.2d 1182 (5th Cir. 1982); *State* v.

*Brooks*, 638 P.2d 537 (1981). Se satisface también si en la silla de los testigos hay oportunidad de contrainterrogar al testigo que prestó la declaración jurada. *Pueblo* v. *Esteves Rosado*, 110 D.P.R. 334 (1980); *California* v. *Green*, 399 U.S. 149 (1970); Freda F. Bein, *Prior Inconsistent Statements: Hearsay Rule, 801(d)(1)(A) and 803(24)*, 26 UCLA L. Rev. 967 (1979); Anotación, Debra T. Landis, *Denial of Recollection as Inconsistent with Prior Statement so as to Render Statement Admissible*, 99 A.L.R.3d 934 (1980). Así la Regla 63 de las de Evidencia dispone que "[e]s admisible como excepción a la regla de prueba de referencia una declaración anterior de un testigo que está presente en el juicio o vista y sujeto a ser contra-interrogado en cuanto a la declaración anterior, siempre que dicha declaración fuere admisible de ser hecha por el declarante como testigo".

En el presente caso el testigo Burgos comenzó a declarar. Manifestó, a preguntas del fiscal, que conocía a todos los participantes en el acto criminal, a los dos acusados, a la víctima y al testigo Lebrón. Admite que fue a la playa con el apelante, donde encontraron a Colón Vázquez (el victimario), y a Lebrón. Declaró que el apelante habló con Colón Vázquez y con Lebrón, pero que no oyó lo que hablaron. De ahí en adelante rehúsa contestar más preguntas del fiscal.

El abogado de la defensa lo contrainterrogó sobre los pormenores de la declaración prestada ante el fiscal y sobre las circunstancias en que la prestó, pero no intentó en forma alguna contrainterrogarlo sobre lo expuesto en la declaración jurada. Tuvo la oportunidad de hacerlo y no lo hizo. Concluyó que era mejor para su defendido exponer las circunstancias en que fue interrogado por el fiscal. Se cumplió, pues, con lo requerido por la Regla 63 antes citada y, como se expresó en *United States ex rel. Thomas* v. *Cuyler*, 548 F.2d 460 (3rd Cir. 1977), lo crucial en relación con el derecho a la confrontación es que la defensa tenga la oportunidad de contrainterrogar. Ver además *United States* v.

*Payne*, 492 F.2d 449 (4th Cir. 1974), *cert.* denegado 419 U.S. 876 (1974); *United States* v. *Infelice*, 506 F.2d 1358 (7th Cir. 1974), *cert.* denegado 419 U.S. 1107 (1974); *United States* v. *Insana*, 423 F.2d 1165 (2nd Cir. 1970), *cert.* denegado 400 U.S. 841 (1970); J. Weinstein & M. Berger, *Weinstein's Evidence*, 801(d)(1)(A)[04], Vol. 4 (1981).

■ En el presente caso la declaración del testigo en corte ratifica ciertos extremos de la declaración anterior, prestada ante el fiscal; rehusó seguir declarando, y a preguntas del abogado defensor expresó que en la declaración jurada hay partes ciertas y partes falsas, y que la prestó bajo amenazas de la Policía. En estas circunstancias es función del juzgador comparar lo expuesto en la declaración anterior, considerando las circunstancias bajo las cuales ésta fue tomada, así como el comportamiento al declarar en corte, y proceder a adjudicar la cuestión a base de la credibilidad que le merezca. La declaración anterior, leída al Jurado, era admisible a tenor con lo dispuesto en la Regla 63.

## II

■ Sostiene el apelante que, siendo cómplice el testigo Lebrón, procedía instruir al Jurado en la forma establecida en la Regla 156 de las de Procedimiento Criminal.[1]

■ "[C]ómplice es aquél que con pleno conocimiento y voluntariamente —sin que medie coacción—, 'de su libre albedrío e intencionalmente, participa en alguna forma en la comisión de un delito, pudiendo, por tanto, *procesársele por el mismo.*' " *Pueblo* v. *Montalvo Acevedo*, 83 D.P.R. 727, 729–730 (1961). Asimismo hemos sostenido que "[e]n ausencia de fallo arbitrario y desprovisto de base en la prueba, no

---

[1] Dispone la Regla 156:

"El testimonio de un co-autor, será examinado con desconfianza y se le dará el peso que estime el juez o el jurado luego de examinarlo con cautela a la luz de toda la evidencia presentada en el caso. En los casos celebrados por jurado se le ofrecerán al jurado instrucciones a esos efectos."

intervendremos en la determinación de hechos del tribunal de instancia sobre la condición de cómplice de determinado testigo". *Pueblo* v. *Agosto Castro*, 102 D.P.R. 441, 445 (1974).

Procede examinar la prueba para determinar si Lebrón es cómplice.

De la prueba antes relatada no surge que Lebrón fuera cómplice. Cuando el apelante fue a la playa de Aguirre y habló con Colón Vázquez, Lebrón permaneció en el carro y no participó en la conversación. Cuando recoge en su carro a Colón Vázquez y a Malavé, éstos están "riéndose, vacilando y chocándose los dos las manos". Ciertamente no tiene indicio alguno para pensar que Colón trama algo contra Malavé. Una vez en marcha el carro, cuando llegan al Barrio Las Mareas, Colón le pone la cuchilla en el cuello y le ordena que se dirija por un callejón. Al llegar al sitio donde se consuma el crimen, Colón, luego de ordenar a Malavé que baje del carro, toma la llave de la ignición para obligar a Lebrón a quedarse. Consumado el acto criminal, le devuelve la llave y le dice "vámonos que ya llevo dos y si tú hablas vas a ser el número tres". Amenazado como estaba de muerte, sigue ese día acompañando a Colón, pero al otro día en la primera oportunidad avisa a la Policía y relata lo ocurrido. En cuanto a la oferta de $1,000 que Colón le hizo para que lo llevara a Salinas, Lebrón manifestó que en ningún momento aceptó la oferta. No estamos justificados si alteramos la determinación del juez de instancia al efecto de que Lebrón no fue cómplice. De la prueba evidentemente surge que medió coacción y actuó respondiendo a esa situación.

Aun si se considerara que Lebrón fue cómplice, la declaración prestada por Burgos corrobora su testimonio. Siendo ello así, de haberse cometido el error, no resulta perjudicial a la luz de lo dispuesto en la Regla 4 de las de Evidencia. [2]

---

[2] Dispone así la Regla 4:

"No se dejará sin efecto una determinación de admisión de evidencia ni se

642

## III

La prueba que tuvo ante sí el Jurado y que antes relatamos establece la culpabilidad del apelante más allá de duda razonable.

*Se confirmará la sentencia apelada.*

---

revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia a menos que:

"(1) La evidencia fue erróneamente admitida a pesar de la oportuna y correcta objeción de la parte perjudicada por la admisión, y

"(2) el tribunal que considera el efecto de la admisión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita."