EL PUEBLO DE PUERTO RICO, apelado, *v.* PEDRO LEBRÓN MORALES, acusado y apelante.

*Número:* CR-83-31    *Resuelto:* 22 de febrero de 1984

*Jorge Arroyo Fernández*, abogado del apelante; *Miguel Pagán, Subprocurador General*, y *Lourdes del C. Rodríguez, Procuradora General Auxiliar*, abogados de El Pueblo.

SENTENCIA

El apelante Pedro Lebrón Morales fue acusado de posesión con la intención de distribuir ilegalmente heroína en común y de mutuo acuerdo con José A. Silva Claudio. Por tribunal de Derecho, fue convicto y sentenciado a 15 años en cada uno de los dos cargos a ser cumplidos concurrentemente. Apunta para sostener su apelación, que la prueba fue

insuficiente, que no se estableció más allá de duda razonable la comisión de un acto delictivo.

Lebrón Morales conoció a José A. Silva Claudio dos semanas antes de los hechos delictivos en un bar en el pueblo de Vega Alta y había compartido con él en varias jugadas de billar. Hacía un mes que había llegado de Chicago donde vivía desde el 1967. Se quedaba en Yabucoa, pero iba a ver una amiga a Vega Alta de nombre Zenaida de quien no recordaba el apellido. Mientras jugaban billar, Silva Claudio le informó que ese día se disponía a viajar a Nueva York y que iba a obtener el boleto correspondiente. El apelante le pidió que obtuviera otro para él y que se lo pagaría en la tarde. Silva Claudio así lo hizo y Lebrón Morales le pagó $91 por el boleto.

La testigo Ediltrudis Romero Rodríguez, oficial del Departamento de Agricultura Federal adscrita al Aeropuerto Internacional de Isla Verde, declaró que vio por cerca de 3 minutos mientras José A. Silva Claudio y Pedro Lebrón Morales caminaban como amigos y se dirigían hasta el lugar donde ella efectuaba inspecciones a los equipajes. Morales Lebrón traía en sus manos un *garment-bag* y una maleta color marrón de tamaño mediano, mientras que José A. Silva Claudio cargaba una maleta marrón pequeña y un abrigo blanco dentro de un plástico transparente. José A. Silva Claudio tomó las dos maletas y procedió a abrirlas. Primero la oficial de agricultura inspeccionó la maleta pequeña y cuando Silva Claudio iba a cerrarla notó unas medias adentro que parecía que contenían guayabas. Silva Claudio le dijo que allí no había nada y se sintió molesto con la inspección y al comenzar a inspeccionar las medias desapareció del lugar. La oficial federal Romero Rodríguez preguntó a Morales Lebrón por Silva Claudio, mas respondió que no lo conocía, que había llegado solo. Procedió a abrir las medias y encontró unos sobres plásticos, tres con polvo marrón y uno con polvo blanco que, posteriormente, luego de análisis químico, resultaron ser heroína y cocaína. Lebrón

Morales permaneció en el lugar. Dio a inspeccionar su bulto *garment-bag* al que la oficial de aduanas colocó un sello y se llevó el abrigo blanco. La oficial de agricultura procedió a llamar a la Policía. Las maletas eran de un mismo juego, en la más pequeña se encontró una licencia con el nombre de Silva Claudio y su dirección de Chicago. Luego la oficial de aduanas, cuando acompañaba a los policías, vio en un tablón de edictos del aeropuerto una fotografía en una requisitoria de prófugo que correspondía a José A. Silva Claudio.

La Policía detuvo a Morales Lebrón dentro del avión. Cuando se le preguntó por José A. Silva Claudio manifestó que lo conocía, pero al preguntársele sobre las maletas informó que no eran de él, que viajaba sin maletas. Una vez arrestado se le ocupó $6,893.91 en efectivo en rollos de 20 y 10 dólares. Morales Lebrón declaró que trajo $10,000 a Puerto Rico para comprar un negocio, y que repartió cerca de $3,000 entre sus familiares al no adquirir ninguno. El juez Balbino Colón Martínez no determinó causa probable. En vista preliminar en alzada el juez Ángel F. Rossy García sí determinó causa.

Se nos plantea si la prueba fue suficiente para encontrar culpable al apelante Morales Lebrón de algún acto delictivo más allá de duda razonable en común y en concierto con José A. Silva Claudio. El apelante alega, además, como error, la denegación de una moción de supresión de evidencia fundamentada en la ilegalidad del registro. No entraremos a considerar este segundo plateamiento toda vez que el caso puede ser resuelto por alegación de insuficiencia de la prueba.

La prueba sostiene la conclusión de que las dos maletas color marrón eran un sólo juego perteneciente a José A. Silva Claudio. Cuando se registraban las maletas, el apelante aunque reaccionó negando conocer al dueño del equipaje, no huyó del lugar y se dirigió a abordar el avión donde fue localizado y arrestado por la Policía. Se comportó como una persona que ignoraba lo que contenían las maletas y que se sabía inocente de un delito.

Son coautores de un delito entre otros los que planifican o cooperan de cualquier modo en su comisión. Art. 35 del Código Penal, 33 L.P.R.A. sec. 3172; *Pueblo* v. *Ortiz*, 104 D.P.R. 115 (1975); *Pueblo* v. *Lucret Quiñones*, 111 D.P.R. 716 (1981). La cooperación o planificación implica participación intencional en la empresa delictiva. Compárese con *Pueblo* v. *Stevenson Colón*, 113 D.P.R. 634 (1982). Véase, *Galarza Soto* v. *E.L.A.*, 109 D.P.R. 179 (1979). Y hay que demostrar la cooperación o planificación más allá de duda razonable. *Pueblo* v. *Carrasquillo Carrasquillo*, 102 D.P.R. 545 (1974).

Aunque parte de la prueba que tuvo ante sí el juzgador de instancia arroja sospecha sobre la culpabilidad del apelante, es forzoso concluir que es razonable abrigar dudas sobre si actuó en concierto y de común acuerdo con Silva Claudio. Recuérdese que si bien llegaron juntos al aeropuerto, el apelante cargaba la maleta más grande y Silva Claudio la más pequeña en la que se encontró el contrabando y fue Silva Claudio el que abrió la maleta para la inspección. Su actuación denotaba que sabía lo que estaba oculto en las medias y por eso desapareció del sitio. El apelante permaneció en el lugar, esperó a que registraran su bulto y abordó el avión. Y ciertamente, tener encima una cantidad sustancial de dinero no suple la prueba que hace falta para conectar al apelante con la comisón del delito imputado. Parece inescapable concluir que no puede prevalecer la sentencia condenatoria.

Se revoca la sentencia dictada por el Tribunal Superior, Sala de Carolina.

Así lo pronunció y manda el Tribunal y certifica la señora Secretaria.

El Juez Asociado Señor Torres Rigual disintió. El Juez Asociado Señor Negrón García disintió en opinión separada a la cual se une el Juez Asociado Señor Rebollo López.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria General*

—O—

Opinión disidente del Juez Asociado Señor Negrón García a la cual se une el Juez Asociado Señor Rebollo López.

Una lectura y análisis de la Exposición Narrativa de la Prueba refleja la culpabilidad del apelante Lebrón Morales más allá de duda razonable, según lo determinó el tribunal de instancia.

Las circunstancias de "amistad" desarrollada con José A. Silva Claudio; la decisión instantánea de acompañarlo a Chicago; la confianza en encargarle que le comprara su pasaje de regreso; la llegada simultánea de ambos al aeropuerto; la identidad en el juego de maletas; el testimonio claro de la funcionaria de aduanas que los vió acercarse juntos hacia el área de inspección; la falsedad del apelante al negar que conocía a su acompañante y que vinieron juntos; su pérdida de memoria sobre hechos esenciales —tales como no recordar el nombre de los distintos hoteles donde se hospedó en Vega Baja; que no hizo gestiones para comprar el negocio de barra para lo cual vino, sobrándole $6,893.91 en efectivo, como no recordar tampoco el barrio, kilómetro y hectómetro de la carretera donde vive su madre, a quien vino a visitar y con quien vivió durante su estadía— constituyen elementos valorativos que destruyen todo viso de veracidad.

Esa falta de legitimidad testimonial no puede suplirse a base de la premisa inarticulada en la sentencia de que al permanecer y no huir, es una conducta demostrativa de que desconocía el contenido ilícito de drogas en la otra maleta. "Ciertamente debemos evitar caer en la superficialidad de atribuirle a toda mente y conducta humana presunciones de un proceder automático. Hay delincuentes que realizan el acto delictivo a plena luz del día, sin ocultarse, y otros de manera contraria. Ante determinado reclamo ·policial pueden responder de distintas maneras: unos huyen; *otros permanecen serenos con la mayor naturalidad*; otros se desprenden, a como dé lugar, del material delictivo; otros

espontáneamente admiten sin reservas sus actuaciones; etc. La dinámica de la conducta delictiva, aunque diferente en sus protagonistas, medios y en un sinnúmero de circunstancias, presenta en el fondo características básicas comunes. Lo importante es detectar cuándo esas discrepancias, producto de las diferencias humanas, están presentes en determinada actuación. Con esta perspectiva en mente es que hemos evaluado el testimonio de los agentes en este caso." (Énfasis suplido.) *Pueblo* v. *Espinet Pagán*, 112 D.P.R. 531, 536–537 (1982).