EL PUEBLO DE PUERTO RICO, apelado, *v.* EDUARDO DE JESÚS AYUSO, acusado y apelante.

Número: CR-84-10 Resuelto: 21 de mayo de 1987

*Pedro González López,* abogado del apelante; *Héctor Rivera Cruz, Secretario de Justicia* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El apelante fue declarado culpable y convicto de los delitos de asesinato en primer grado e infracción al Art. 99 del Código Penal de Puerto Rico (violación) por el jurado que intervino, como juzgador de hechos, en proceso celebrado ante el Tribunal Superior de Puerto Rico, Sala de Carolina.

En el escrito de apelación que radicara le imputó al referido foro la comisión de los siguientes errores:

A. Violación a la Constitución del Estado Libre Asociado de Puerto Rico y [la] de los Estados Unidos de América de la siguiente manera:

1. Se le violó el derecho a un juicio justo e imparcial.

2. Se le violó el derecho a un juicio rápido y al debido proceso de Ley.

3. *Se le violó el derecho a carearse con los testigos[,] el derecho a contra-interrogar.*

B. Violaciones a las Reglas de Procedimiento Criminal:

1. Se violó la Regla 64— Fundamentos de la Moción para Desestimar[,] en sus incisos N-1, N-2, N-3 y N-4 [sic].

2. Regla 67— Orden de Retroceso cuando impide un nuevo juicio.

3. Regla 156— Juicio— Corroboración de Cómplice.

C. Señalamiento de Errores por el Tribunal:

1. *Erró el Tribunal al permitir evidencia al amparo de la Regla 63— Declaraciones Anteriores del Testigo.*

2. Erró el Tribunal al no impartir instrucciones al jurado al amparo de la Regla 156 de Procedimiento Criminal.

3. Erró el Tribunal al permitir que un testigo hablara sobre lo manifestado por tercero, por ser esta prueba de referencia.

4. *Erró el Tribunal a que se leyera una declaración jurada de un testigo que no estaba disponible para ser contra-interrogado.*

5. Erró el Juez en admitir en evidencia fotografías indebidamente identificadas.

D. Erró el jurado en la interpretación de la evidencia. (Énfasis suplido.)

Un examen de la exposición narrativa de la prueba demuestra que el tribunal de instancia cometió grave error de derecho, *bajo las circunstancias particulares presentes en dicho proceso,* al admitir en evidencia como prueba sustantiva la confesión que había prestado ante funcionarios del Estado el coautor de los hechos; error que amerita la revocación de las sentencias apeladas.

I

Como testigos de cargo, el Ministerio Público anunció y llamó a declarar a la Dra. Yocasta Brugal, patóloga forense que practicó la autopsia en el cuerpo de la víctima, una joven mujer de nombre Clara M. Falú Febres; el agente de la Policía de Puerto Rico Ramón Villarán Ayala, quien fue el funcionario que realizó la investigación del caso, la

cual los llevó al aquí apelante Eduardo De Jesús Ayuso y al coacusado Luis Felipe Arroyo Rivera; el Fiscal Aurelio Miró Carrión, quien le tomó una confesión al mencionado coacusado Arroyo Rivera, y el propio Arroyo Rivera.(1)

Para la mejor comprensión de lo que aquí se resuelve, resulta necesario que se transcriba lo sucedido en relación con la "declaración" de Luis Felipe Arroyo Rivera —único testigo de cargo que "conecta" al apelante con la comisión de los hechos que se le imputan— según ello surge de la exposición narrativa de la prueba certificada como correcta por el tribunal de instancia.

El Sr. Luis Felipe Arroyo en una voz baja e inaudible dijo su nombre y tanto el Ministerio Público como el Honorable Juez tuvo que pedirle que lo dijera en voz alta, de manera que se pudiera escuchar por los señores del jurado. El fiscal le preguntó dónde residía en este momento y [ap]enas se pudo escuchar que su respuesta fue en el Anexo de Miramar por asesinato y violación.

De igual manera sigue diciendo el Sr. Luis Felipe Arroyo que vivía con su madre y que tiene 18 años. *Luego el fiscal le pregunta que dónde se encontraba el 23 de diciembre de 1981 en el transcurso de la noche y él contestó, "no tengo nada que hablar sobre eso". Se le pidió que lo dijera en voz alta y volvió a contestar, "no tengo nada que hablar sobre eso".*

El Honorable Fiscal le pidió al Juez que lo instruyera bajo apercibimiento de desacato. Acto seguido, el Juez lo instruyó bajo apercibimiento de desacato y le preguntó que si sabía lo que era apercibimiento de desacato contestando el testigo con la cabeza en la afirmativa *y el Honorable Juez entonces lo ordena a que conteste.*

Se le formula la pregunta nuevamente, que dónde se encontraba el día 23 de diciembre de 1981 en horas de la noche *y el testigo contesta "yo no tengo que contestar nada sobre*

---

(1) Este Tribunal, mediante sentencia de 15 de enero de 1986, confirmó las convicciones que por los delitos de asesinato en primer grado y violación rindió un jurado, en juicio separado, en proceso celebrado ante el Tribunal Superior de Puerto Rico, Sala de Carolina.

*eso Honorable Juez".* El jurado interviene y dice que no escuchó la contestación. Se le pide al testigo que hable en voz alta y el testigo una vez más contesta, "no voy a contestar".

El Honorable Fiscal pregunta si había prestado declaración jurada pero antes el Honorable Juez interviene y se asegura de que el testigo sabe lo que es un desacato al Tribunal. *Entonces el Juez le ordena una vez más a que conteste la pregunta.* Y una vez más se le formula la pregunta que dónde se encontraba el 23 de diciembre de 1981 en horas de la noche *y la contestación fue la misma, "no voy a contestar".*

*Luego el Honorable Juez pregunta qu[é] razón o motivo tenía para no contestar las preguntas y el testigo contesto, "ninguna".* El Honorable Juez le pregunta por qué entonces no contesta las preguntas *y el testigo nuevamente contesta "no voy a contestar".* Luego el honorable Juez le pide las razones por las cuales él no contesta las preguntas y el testigo contesta, *"yo salí de mi caso y no voy a contestar más preguntas".* Se continuó, tanto por el fiscal como por el Honorable Juez, tratando de averiguar las razones por las cuales el testigo no contestaba *y la contestación fue siempre la misma.*

El Honorable Fiscal en un intento por impresionar al jurado le preguntó al testigo si era o no cierto que él estaba cumpliendo en una institución penal a [lo] que el testigo contestó que sí. Y acto seguido el Honorable Fiscal de una manera agresiva y una voz estruendoza le preguntó al testigo que si lo tenían amenazado de matarlo si hablaba. A esta pregunta la Defensa objetó enérgicamente solicitando la Defensa que si el fiscal tenía ese tipo de prueba que la trajera.

La objeción de la Defensa estaba basada en que no era pregunta, y si lo era, era totalmente sujestiva [sic]. El Honorable Juez entendió que no era una pregunta sujestiva [sic] y la permitió. La Defensa enfatizó el hecho de que el testigo no iba a contestar las preguntas y se le haría imposible re-preguntar sobre si había sido amenazado de muerte.

Después de unos argumentos de ambas partes se continuó con el interrogatorio. Entre las cosas que se argumentaron está la de que el testigo era un testigo hostil. Hasta ese momento el Tribunal no lo había determinado como tal.

Por la Defensa se argumentó que ese tipo de pregunta conlleva una fuerte inferencia de que de hecho el testigo había

sido amenazado, información que llegó a los oídos del jurado donde el daño es irreparable. Esto es así porque el testigo se reh[ú]sa a contestar las preguntas. Todo este argumento fue en ausencia del jurado y del testigo Luis Felipe Arroyo.

Se trajo nuevamente a las damas y caballeros del jurado y al testigo Luis Felipe Arroyo Rivera. *Se le formuló nuevamente la pregunta de que si había sido amenazado de muerte o si tenía miedo que lo mataran y la contestación fue que no.* Se le preguntó qué razones tenía y el testigo contestó "porque ya yo salí de mi caso".

Luego continuó el Honorable Fiscal haciendo preguntas y esta vez le pregunta si había firmado alguna declaración jurada *y el testigo contesta "no voy a contestar".* El Honorable Fiscal solicitó que se instruyera nuevamente al testigo. El Honorable Juez le formula la pregunta nuevamente al testigo *y el testigo contesta "no me acuerdo".*

*En este momento el compañero fiscal solicita que se identifique un documento. Este documento es la declaración jurada y se marca como Iden. I del Ministerio Público.*

El fiscal comienza a interrogar al testigo sobre la declaración jurada. *Le pregunta si la ha visto y el testigo contesta que sí.* Continuó el fiscal preguntando específicamente si el 28 de diciembre de 1981 el testigo había ido a la Fiscalía de Carolina y la respuesta fue "no me acuerdo". Que si había ido específicamente con su madre y la contestación fue "no me acuerdo".

Continuó el fiscal preguntando si se acuerda haber visto al fiscal Miró y la contestación fue sí. Se le preguntó dónde había conocido al señor fiscal y la respuesta fue "no me acuerdo d[ó]nde lo conocí". Se le preguntó que si fue a la Fiscalía de Carolina para hablar con el fiscal Miró y a esta pregunta la Defensa objetó por ser sujestiva [sic] y el Tribunal permitió que se continuara con este tipo de interrogatorio por entender el Tribunal que la pregunta tenía tres contestaciones. De todas maneras, el testigo contestó a esta pregunta "no me acuerdo".

Luego preguntó el honorable Fiscal que si era o no cierto que el día 23 de diciembre él había declarado sobre unos hechos. La Defensa objetó la pregunta nuevamente por ser sujestiva [sic] y el Tribunal la permitió. *El Tribunal entiende*

*que mostrándole la declaración jurada prestada por el testigo era en realidad refrescándole la memoria.* Todo ello por encima de las objeciones de la Defensa.

Nuevamente el fiscal continúa preguntando sobre los hechos del 23 de diciembre de 1981 y si para ese entonces fue que el testigo conoció al fiscal Miró y el testigo contestó "no me acuerdo". Luego el fiscal le pregunta al testigo sobre unas huellas digitales que aparecen en la declaración jurada, a la cual la Defensa objetó nuevamente y el Honorable Juez permitió la pregunta. Continúa luego el fiscal preguntándole si por los hechos que ocurrieron el 23 de diciembre de 1981 fue juzgado y el testigo contesta que sí. Y continuó preguntándole sobre si por esos hechos, el 23 de diciembre, está cumpliendo y el testigo contesta que sí.

Le pregunta además que si en aquel entonces él admitió haber hecho la declaración jurada en cuestión. Nosotros objetamos porque se estaba preguntando sobre un juicio que ya había pasado. A esta objeción el Tribunal la declaró Con Lugar; pero aún así el Honorable fiscal continúa preguntándole y volvió a preguntar si para los hechos ocurridos el día 23 de diciembre el testigo había sido juzgado. Ahora el testigo contesta "no me acuerdo".

*Y el fiscal continuó preguntando y preguntando y preguntando sobre lo mismo y el testigo contesta "no me acuerdo; no me acuerdo; y no me acuerdo".* Tanto estuvo el Honorable Fiscal preguntando sobre lo mismo que en un momento el testigo dijo que sí que había prestado una declaración jurada. Entonces comenzó nuevamente el interrogatorio sobre lo mismo y el testigo con la misma contestación, "no me acuerdo; no; sí; no; sí". Entre las preguntas más importantes, el Ministerio Fiscal le preguntó si se le habían hecho las advertencias de Ley y el testigo contestó "no me acuerdo". También se le preguntó si en aquella ocasión él deseaba declarar y el testigo contestó "no me acuerdo".

Continuó el interrogatorio y el fiscal le preguntó hasta qué grado había llegado a la escuela y el testigo contestó "hasta quinto o cuarto grado". El fiscal le preguntó si en aquel momento usted se sentía bien de salud y el testigo le dijo "no me acuerdo". Le preguntó si se acordaba de la fiscal Iris Meléndez y el testigo contestó "no" y si se acuerda haber hablado

con el Agente Villarán y contestó que no. Le preguntaron si se acuerda que él había sido detenido por esos hechos y la contestación fue "no me acuerdo".

*Continuó el Honorable Fiscal con su interrogatorio y la Defensa objetó porque lo que estaba haciendo era leyendo la declaración que el mismo testigo había dicho que no se acordaba.* Se terminaron los procedimientos por la mañana y se continuaron por la tarde.

El Honorable Fiscal solicitó la presencia de varios testigos que les fueron mostrados uno por uno. Se le mostró la Honorable Juez Lourdes Velázquez y contestó que "sí la había visto pero no le sé el nombre". Al presentársele al Fiscal Miró a la pregunta de si lo había visto antes contestó "sí". A la pregunta dónde, contestó "en diferentes sitios". Cuando se le preguntó el nombre contestó "Aurelio Miró". Cuando se le mostró a la Fiscal Iris Meléndez contestó que sí la había visto, pero que no recordaba dónde y que no le sabía el nombre. Cuando se le mostró al Agente Villarán contestó "no voy a contestar". Cuando se le preguntó por qué razón contestó, "ninguna". En las demás preguntas contestó "no voy a contestar". Se solicitó por el fiscal además de que se citara la persona que tomó las huellas monodactilares de la Policía de Puerto Rico. La misma supuestamente estaba en el Cuartel General. Se informó que el Honorable Fiscal haría las gestiones para el lunes próximo.

Después de una serie de argumentos, la Defensa solicitó que necesitaba al Lcdo. Sepúlveda de Asistencia Legal, al Juez Rafael Orraca y también al Juez Delgado. El fiscal solicitó también que se incluyera como testigo al Juez Rossy, a la fiscal Iris Meléndez y al taquígrafo de Fiscalía, señor Amador Tolentino. Luego de esa serie de argumentos, se reanudó esa serie de interrogatorios con el Sr. Luis Felipe Arroyo y las contestaciones de las preguntas mantuvieron el mismo ritmo: "no me acuerdo; sí; no".

*Fue que entonces el Honorable Fiscal ante las contestaciones del testigo procedió a leer la declaración jurada que supuestamente prestara el testigo por encima de las objeciones.* Y el resto de interrogatorio por parte del Ministerio Público al testigo Luis Felipe Arroyo se mantuvo siguiendo el mismo patrón mencionado.

*Después de terminado el directo, el Honorable Fiscal le pidió al Juez que se admitiera en evidencia la declaración jurada prestada por Luis Felipe Arroyo. Todo ello no empece la Defensa haber objetado la misma por ser prueba de referencia y ésta fue leída en su totalidad al jurado.*

Una vez terminado el Honorable Ministerio Público con el interrogatorio directo, *se puso el testigo a la disposición de la Defensa para el contrainterrogatorio de Luis Felipe Arroyo. La defensa intentó contra-interrogar al testigo pero el esfuerzo fue infructuoso, puesto que el testigo continuó diciendo "no voy a contestar", a pesar de haber sido instruído por el Honorable Juez para que así lo hiciera.* El testigo manifestó además a preguntas de la Defensa de si lo que dijo el fiscal es correcto, "algunas son correctas". Cuando se le preguntó si ha sido amenazado en su vida contestó "no me ha amenazado nadie". *Cuando le preguntó que, qué lo llevó a decir que unas son correctas y otras no, contestó, "no voy a contestar". Y luego continuó con su acostumbrado "no voy a contestar", "no me acuerdo".* (Énfasis suplido.) Anejo M, págs. 21–26.

Como hemos podido notar, el tribunal de instancia admitió en evidencia la declaración jurada (confesión) prestada por el testigo Luis Felipe Arroyo Rivera —la cual involucra en la comisión de los hechos al aquí apelante— *antes* de que la defensa de éste tuviera tan siquiera la oportunidad de contrainterrogar al mismo;[2] intento que posteriormente resultó totalmente infructuoso al dicho testigo negarse una y otra vez a contestar las preguntas que le formulara el abogado defensor.

## II

El Procurador General de Puerto Rico, en el alegato que radicara en el presente caso, argumenta en cuanto a este extremo que la confesión era admisible en evidencia por cuanto "se cumplen a cabalidad las exigencias de la Regla

---

[2] Ello igualmente surge de la "minuta" que resume los procedimientos acaecidos ante el foro de instancia el 23 de enero de 1984.

63" de Evidencia y que "asumiendo únicamente a los fines de la discusión, que el testigo Luis Felipe Arroyo Rivera no estaba disponible conforme a la definición de no disponible como testigo bajo la Regla 64(A) de las de Evidencia, ... entonces su declaración anterior era igualmente admisible en evidencia" bajo las disposiciones de la Regla 64(B)(3). No tiene razón; veamos por qué. La referida Regla 63 establece que:

*Regla 63. Declaraciones anteriores del testigo*

Es admisible como excepción a la regla de prueba de referencia una declaración anterior *de un testigo que está presente en el juicio o vista y sujeto a ser contrainterrogado en cuanto a la declaración anterior*, siempre que dicha declaración fuere admisible de ser hecha por el declarante declarando como testigo. (Énfasis suplido.) 32 L.P.R.A. Ap. IV, R. 63.

En *Pueblo* v. *Esteves Rosado*, 110 D.P.R. 334 (1980), expresamos en relación con la citada Regla 63, que la "admisibilidad de declaraciones anteriores de un testigo que está ocupando la silla testifical, sujeto a contrainterrogatorio, es una de las instancias en que menos se vulnera el derecho de la confrontación", íd., pág. 339; que la Regla 63 "recoge una versión más amplia que la federal, al apartarse de la visión prevaleciente, pues admite, para probar la verdad de lo aseverado en ella, *todo tipo de declaración anterior de un testigo, sin limitar tal admisión a determinada clase de declaraciones*, como en la regla federal", íd., pág. 340, y que "lo *crucial* es si la contestación del testigo permite preguntarle *sobre sus percepciones y memoria* relativa a los hechos que declaró anteriormente, para evaluar esas funciones síquicas del declarante". (Énfasis suplido.) Íd., pág. 345.

En *Pueblo* v. *Stevenson Colón*, 113 D.P.R. 634 (1982), manifestamos —en relación con la admisibilidad como

prueba sustantiva de una declaración bajo juramento prestada por un testigo antes del juicio— que el "requisito constitucional de todo acusado a confrontarse con los testigos de cargo se satisface", íd., pág. 638, si al momento de prestar la declaración hubo la oportunidad de contrainterrogar al testigo o si se le brinda la oportunidad a la defensa de así hacerlo durante el juicio, ya que "lo *crucial* en relación con el derecho a la confrontación es que la defensa *tenga la oportunidad de contrainterrogar*". (Énfasis suplido.) Íd., pág. 639.

 Ahora bien, como correctamente expresara el Juez Asociado Señor Negrón García en la opinión concurrente que emitiera en *Pueblo* v. *Hernández Osorio*, 112 D.P.R. 182, 193, 197–199 (1982),[3] la Regla 63 de Evidencia "es de aplicación cuando un testigo presta *una declaración en el tribunal distinta a una anterior*, para que el juzgador tenga el beneficio de *evaluar ambas declaraciones* y dar crédito a la que le parezca más confiable, si alguna. *Es decir, la aplicabilidad de la Regla 63 supone que el testigo ofrezca algún testimonio. Si el testigo sencillamente se niega a declarar, el problema debe verse bajo la Regla 64. Por otro lado, si el testigo se niega a ser contrainterrogado con relación a la declaración anterior, se desvanece el fundamento de admisibilidad.* Dicho fundamento es que estando el testigo declarando bajo juramento sobre su declaración anterior (si lo hizo, si es verdadera, razones por las que lo hizo, etc.), el juzgador tiene elementos de juicio suficientes y confiables para evaluar la declaración anterior, y, por lo tanto, el derecho de confrontación se lesiona sólo mínimamente.... En resumen, pertenece a la esencia de la Regla 63 que el testigo pueda ser contrainterrogado *plena y efectivamente* sobre su decla-

---

[3] Caso en que no hubo opinión del Tribunal.

ración anterior. El testigo que rehúsa declarar no está sujeto a ese pleno y efectivo contrainterrogatorio, por lo que sus declaraciones anteriores no son admisibles bajo la Regla 63". (Énfasis suplido.)

■ En el presente caso, según ello surge de la exposición narrativa de la prueba que transcribiéramos, el testigo Luis Felipe Arroyo Rivera se negó a declarar; no brindó ningún testimonio. No pudo ser plena y efectivamente contrainterrogado por la defensa. *Pueblo* v. *Stevenson Colón*, ante.([4])

Resulta obvio que la declaración jurada, a manera de confesión, que Arroyo Rivera prestara ante el fiscal *no* era admisible, en esas circunstancias, bajo las disposiciones de la Regla 63 de Evidencia.

## III

La declaración jurada prestada por Arroyo Rivera, *dadas las circunstancias particulares del caso*, tampoco era admisible en evidencia como sostiene el Procurador General al amparo de la Regla 64(B)(3) de Evidencia. Dicha disposición legal establece:

*Regla 64. No disponibilidad del testigo*

(A) *Definición.* "*No disponible como testigo*" *incluye situaciones en que el declarante:*

(1) Está exento o impedido de declarar por razón de un privilegio reconocido en esta regla en relación al asunto u objeto de su declaración, o

(2) *insiste en no declarar a pesar de orden del tribunal para que declare, o*

(3) testifica no recordar, o

---

([4]) Dicho testigo tampoco pudo ser contrainterrogado durante la vista preliminar.

(4) ha fallecido o está imposibilitado de comparecer a declarar por razón de enfermedad o impedimento mental o físico, o

(5) está ausente de la vista y el proponente de su declaración ha desplegado diligencia para conseguir su comparecencia mediante citación del tribunal.

No se entenderá que un declarante no está disponible como testigo si la alegada razón de la no disponibilidad ha sido motivada por la gestión o conducta del proponente de la declaración con el propósito de evitar que el declarante comparezca o declare.

(B) *Cuando el declarante no está disponible como testigo, es admisible como excepción a la regla de prueba de referencia:*

(1) *Testimonio anterior:* Un testimonio dado como testigo en otra vista o una deposición tomada conforme a derecho del mismo u otro procedimiento, si es ofrecido contra una persona que en la ocasión en que se hizo la declaración ofreció la misma para su beneficio o tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que tiene en la vista.

(2) *Declaraciones en peligro de muerte:* Una declaración hecha por una persona a base de su conocimiento personal y bajo la creencia de su muerte inminente.

(3) *Declaraciones contra interés:* Una declaración que al momento de ser hecha era tan contraria al interés pecuniario o propietario del declarante o le sometía al riesgo de responsabilidad civil o criminal, o tendía de tal modo a desvirtuar una reclamación suya contra otro, o creaba tal riesgo de convertirlo en objeto de odio, ridículo o desgracia social en la comunidad, que un hombre razonable en su situación no hubiera hecho la declaración a menos que la creyera cierta.

(4) *Declaraciones sobre historial personal o familiar:*

(i) Una declaración sobre el nacimiento, adopción, matrimonio, divorcio, filiación, parentesco por consanguinidad o afinidad, raza, linaje u otro hecho similar de historial familiar o personal del propio declarante, aunque éste no tuviera medios de adquirir conocimiento personal del asunto declarado.

(ii) Una declaración sobre la materia señalada en el inciso (i) anterior, y de otra persona incluyendo la muerte

de ésta si dicha persona está relacionada con el declarante por parentesco de consanguinidad, afinidad o adopción o existe una relación tal entre el declarante y la familia de la otra persona que hiciera probable que el declarante tuviera información precisa referente al asunto declarado.

(5) *Otras excepciones:* Una declaración con suficiente garantía circunstancial de confiabilidad si se determinare que:

(i) tiene mayor valor probatorio, en relación al punto para lo que se ofrece, que cualquier otra evidencia que el proponente pudiera conseguir mediando esfuerzo razonable y

(ii) el proponente notificó a la parte contra quien la ofrece, con razonable anterioridad, su intención de ofrecer en evidencia tal declaración informándole sobre los particulares de ésta, incluyendo nombre y dirección del declarante. (Énfasis suplido.)

Cualificando Rivera Arroyo como un testigo "no disponible" al amparo de las disposiciones de la transcrita Regla 64(A)(2), procede que determinemos si la declaración jurada, a manera de confesión, que él prestara ante el Fiscal Aurelio Miró Carrión resultaba ser admisible en evidencia bajo la Regla 64(B)(3), como excepción a la regla general excluyente de prueba de referencia.

▬▬ Es correcto que bajo el referido inciso (3) es admisible en evidencia la declaración de una persona "no disponible" como testigo que al momento de ser hecha la someta a riesgo de responsabilidad criminal. Ahora bien, cuando la declaración contra el interés penal hecha por una persona compromete a *otras* personas surge un problema constitucional cuando alguna de esas personas resulta acusada y se pretende utilizar la declaración contra ésta, no estando disponible como testigo el declarante, puede resultar lesionado el derecho constitucional que tiene el imputado de delito a "confrontarse" con los testigos en su contra. Véanse: Art. II, Sec. 11, de la Constitución del

E.L.A.; Regla 40 de Evidencia de 1979, y la Sexta Enmienda de la Constitución de Estados Unidos de América.

██ Así específicamente ha sido reconocido por el Tribunal Supremo de Estados Unidos en los casos de *Lee* v. *Illinois*, 90 L.Ed.2d 514 (1986), y *New Mexico* v. *Earnest*, 91 L.Ed.2d 539 (1986). En *Lee* v. *Illinois*, ante, el Tribunal Supremo nacional manifestó que este tipo de situación —en donde está envuelta una confesión de una persona que no "está disponible como testigo", la cual confesión inculpa a un coautor— no puede ser caracterizada como una bajo la excepción de "declaración contra interés penal" por razón de ser muy amplio dicho término; que esta situación hay que examinarla, bajo la "cláusula de confrontación" de la Sexta Enmienda de la Constitución federal, como una "involving a confession by an accomplice which incrimi-nates a criminal defendant". *Lee* v. *Illinois*, ante, pág. 528, n. 5. Específicamente se resolvió que una confesión prestada por un coautor, que no está disponible como testigo, se presume no confiable cuando se ofrece en el juicio contra otro acusado a quien inculpa, resultando inadmisible la misma a menos que el Ministerio Público demuestre que, bajo las circunstancias especiales del caso, existan elementos de confiabilidad o corroboración que justifican que la misma sea admitida en evidencia, refutando de esta manera la mencionada presunción.

En el presente caso, el Ministerio Fiscal no aportó prueba a esos efectos. Cometió error, en su consecuencia, el tribunal de instancia al admitir en evidencia la confesión prestada por el coautor —"no disponible como testigo"— Luis Felipe Arroyo Rivera.[5] Ahora bien, al momento de

---

[5] Este caso es distinguible de *Pueblo* v. *Mangual Hernández*, 111 D.P.R. 136 (1981), en donde resolvimos que era admisible en evidencia, bajo la Regla 64(B)(3) de Evidencia, una declaración jurada (confesión) de un coautor, quien "no estaba disponible" como testigo por razón de incapacidad mental, en el juicio que se le

celebrarse el proceso ante el foro de instancia, el Estado no estaba consciente de esa obligación. Debe brindársele esa oportunidad.

Por las razones antes expresadas, *procede que se dicte sentencia revocatoria de las dictadas en el presente caso por el Tribunal Superior de Puerto Rico, Sala de Carolina, devolviéndose el mismo a dicho foro para la celebración de un nuevo juicio y la continuación de procedimientos ulteriores compatibles con lo aquí resuelto.*

El Juez Asociado Señor Negrón García concurre en el resultado con opinión escrita, a la cual se une el Juez Asociado Señor Alonso Alonso. La Juez Asociada Señora Naveira de Rodón no intervino.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Negrón García a la cual se une el Juez Asociado Señor Alonso Alonso.

La adopción hoy por el Tribunal de nuestra visión sobre el alcance de las Reglas 63 y 64(B)(5) de Evidencia, 32 L.P.R.A. Ap. IV, según expuesto en *Pueblo* v. *Hernández Osorio*, 112 D.P.R. 182, 193–204 (1982), nos mueve a exponer separadamente nuestro criterio sobre el desarrollo doctrinario más reciente en esta materia.

I

La declaración de una persona, que le autoincrimina por la comisión de un delito, e involucra a un tercero, suscita

---

celebró al allí apelante. Aparte de que en dicha situación la declaración favorecía al apelante por cuanto lo excluía como uno de los participantes en el crimen cometido, en dicho caso fue la defensa quien intentó sin éxito la admisión de dicha declaración ante el foro de instancia. En su consecuencia, en dicho caso no estaba envuelto el "derecho de confrontación".

varios problemas bajo las Reglas de Evidencia y el derecho a confrontación.

Si es *extrajudicial* (v.g. presentada ante un fiscal o la Policía), aunque técnicamente es prueba de referencia, por excepción resulta admisible contra el declarante bajo la Regla 62 de Evidencia, *supra*, sujeto a que no adolezca de algún vicio constitucional bajo las normas jurisprudenciales contra la autoincriminación.

En cuanto a la admisibilidad contra el tercero, la situación dependerá de la disponibilidad o no del declarante para testificar. Si está disponible y sujeto a contrainterrogatorio, su declaración extrajudicial es admisible contra el tercero, bajo los principios de la Regla 63, y *Pueblo* v. *Esteves Rosado*, 110 D.P.R. 334 (1980), sin impedimento bajo el derecho a confrontación. Si, por el contrario, no lo está — por cualesquiera de los motivos señalados en la Regla 64(A)— no podrá invocarse la Regla 63 para admitir esa declaración extrajudicial contra el tercero. Entonces, es aplicable la Regla 64(B).

Específicamente esta última circunstancia es la planteada en el caso de autos con relación a la declaración del coautor Luis F. Arroyo Rivera en la que alegadamente admite haber cometido los delitos de asesinato y violación junto al apelante Eduardo De Jesús Ayuso. Por su silencio y negativa a declarar en el juicio, no está disponible. Ciertamente, en teoría, esa declaración es contra interés *penal* bajo la Regla 64(B)(3) de Evidencia, *supra*. Aun así, su admisibilidad contra el apelante De Jesús Ayuso levanta serias interrogantes constitucionales bajo el derecho a confrontación. *Douglas* v. *Alabama*, 380 U.S. 415 (1965); *Bruton* v. *United States*, 391 U.S. 123 (1968). No basta que se trate de una admisión contra interés penal del declarante. Al mezclar a un tercero, ello puede beneficiarle o aliviarle la situación, lo que debilita la hipótesis en que se apuntala

dicha Regla 64(B)(3), a saber, que la declaración sea de alto grado contraria a su interés.

Recientemente, en *Lee* v. *Illinois*, 90 L.Ed.2d 514, 528 (1986), el Tribunal Supremo federal, en el escolio 5, se negó a resolver este problema bajo el molde estrecho de su equivalente, la Regla 804(b)(3) federal. 28 U.S.C. La norma establecida en *Lee* v. *Illinois*, supra, es que la confesión de un coautor se presume no confiable, y por ende inadmisible, en cuanto prueba contra otro coautor así involucrado. Sin embargo, tal presunción no es absoluta. Puede ser rebatida por el Ministerio Fiscal estableciendo elementos circunstanciales de confiabilidad. En *Lee* v. *Illinois*, supra, cuatro de los nueve jueces estimaron que la presunción fue rebatida a base de que había otra confesión ofrecida del otro coautor. Este enfoque —que se ha conceptualizado como la norma de las confesiones interrelacionadas— permite la admisión de esa confesión como prueba contra el coautor y ha tenido buena aceptación. Véase *People* v. *Berzups*, 402 N.E.2d 1155 (N.Y. 1980). Y el mismo Tribunal Supremo federal, en *New Mexico* v. *Earnest*, 91 L.E.2d 539 (1986), revocó una decisión del Supremo de Nuevo Méjico, que a su vez había revocado una convicción, al estimar que el derecho a confrontación, bajo la Constitución federal, impedía absolutamente recibir la confesión de un declarante como prueba contra el coautor. Devolvió el caso al foro de origen para que siguiera la norma de *Lee* v. *Illinois*, supra, esto es, que se trata de una presunción de no confiabilidad, rebatible por el Estado. La opinión concurrente suscrita por cuatro jueces, dice que "en la medida en que *Douglas* v. *Alabama* interpretó que la Cláusula de Confrontación requiere una oportunidad para contrainterrogar antes de admitir una declaración extrajudicial de un coacusado, dicho caso ya no es buen precedente". (Traducción nuestra.) *New Mexico* v. *Earnest*, supra, págs. 539–540. Más aún, *Lee* v. *Illinois*, supra, resuelve que la admisión errónea en violación al derecho

a confrontación de una confesión del declarante contra el coautor no acarrea la revocación automática de la convicción de éste, pues queda abierta la posibilidad de "error no perjudicial". Sobre el amplio alcance del error no perjudicial, aunque de rango constitucional, véase *Rose* v. *Clark*, 92 L.Ed.2d 460 (1986).

## II

En suma, bajo este esquema la declaración de Arroyo Rivera, en la que confesó haber cometido los delitos junto al apelante De Jesús Ayuso, no es fatalmente inadmisible contra éste. Su admisión errónea en el juicio contra el apelante De Jesús Ayuso no conllevaría la revocación automática de su convicción. De haber indicios de confiabilidad —debidamente acreditada por el Ministerio Público en armonía con la Regla 9(A) de Evidencia, *supra*— quedaría rebatida la presunción de no confiabilidad y la declaración sería admisible bajo la Regla 64(B)(3), sin impedimento constitucional bajo el derecho a confrontación. Esta solución satisface el criterio establecido en *Ohio* v. *Roberts*, 448 U.S, 56, 66 (1980), a los fines de que la declaración es admisible una vez se establece la *no disponibilidad* del declarante y concurren los indicios circunstanciales de confiabilidad.